(No. 53610.-

WILLARD DEAN OSBORNE, Jr., a Minor, Appellee, v. VICTOR SPROWLS, Appellant.

*Opinion filed March 31, 1981.*

George R. Black, of Black & Black, of Morris, for appellant.

Peter F. Ferracuti & Associates, of Ottawa (Eric B. Deobler, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This is a negligence action. Plaintiff, Willard Dean (Skip) Osborne, Jr., sued defendant, Victor Sprowls, for injuries sustained in a collision late in the afternoon on September 25, 1975. One count of the complaint alleged negligence, and a second count alleged wilful and wanton misconduct. The trial court dismissed the latter count on defendant's motion for a directed verdict. The jury, empaneled in La Salle County, found for the plaintiff on the negligence count and assessed damages in the sum of $31,350. Defendant appealed, and a divided appellate court affirmed. (83 Ill. App. 3d 968.) We granted leave to appeal and we now affirm. The damage assessment is not at issue.

Plaintiff was 13 years old, stood between 4 feet, 8 inches, and 5 feet tall and weighed 80 to 85 pounds on the date of the incident at issue. He was in the eighth grade of the local junior high school. On September 25, 1975, he and about 15 classmates worked on a school homecoming parade float after school for about 30 to 45 minutes. After they were finished for that day, Laura Cronin, one of the eighth graders working on the float, invited her classmates to her house for a pizza party. Her invitation was readily accepted. Most of those in attendance proceeded to her home.

After their arrival at the Cronin home, a game of tackle the football began. This game is an amalgamation of football, keep away, and soccer. Players chase the carrier of the football, who runs with it until tackled or until the ball is thrown away. In the course of the game the ball may be thrown or kicked. The game was played often in Earlville.

The Cronin backyard extended west from their home approximately 70 yards to an unpaved, gravel-topped alley (running north and south). The house next door to the north, about 70 feet from the Cronin house, was owned by Donald Norton. The Norton backyard was 40 to 50 yards wide and also about 70 yards deep. The game was played in the Cronin and Norton backyards which adjoined. No formal boundaries marked the Cronin and Norton lots. A dirt pile, a picnic table, and a small tree were located about 30 yards west of the homes, and between them. The pile of dirt was 10 feet north of the picnic table; the small tree was 10 feet south of it.

The yard south of Cronin's was considered out of bounds due to the inhospitality of the yard owner. According to one witness, the alley to the west of the backyards was also considered out of bounds, for safety reasons.

Defendant testified that he was 15 years old at the time of the incident. He then was 5 feet, 2 or 3 inches tall and weighed 130 pounds. He was a sophomore in high school and did not work on the float. He lived near the Cronin residence. He said he saw the eighth graders "playing around" with a football and that "they asked [him] if [he] wanted to play." As this testimony was uncontradicted, he cannot be considered, as plaintiff suggested in oral argument, an interloper.

There were three disputed issues at trial: (1) where the tackle-the-football game was played; (2) what plaintiff and defendant were doing when they collided; and (3)

where plaintiff and defendant collided. Regarding the first issue, Tim Slaughterback, plaintiff's witness, testified that the game was not played near the dirt pile, picnic table, or small tree, but that the game was otherwise practically without boundaries. Defendant testified that the game was played near the picnic table and dirt pile but not near the small tree. Two witnesses for defendant testified that the game was played near the dirt pile, picnic table, and small tree.

Regarding the second issue, Tim Slaughterback and the plaintiff testified that plaintiff was sitting or crouching, not playing the game, when defendant collided with him. By their account, when they arrived at Cronin's, the pizza was not ready. They played tackle the football for less than one hour. Then it was announced that the pizza was ready and the game ended. Plaintiff and Tim Slaughterback went over near the picnic table for some potato chips, and were talking with two girls. Defendant and an unidentified person were seen playing catch with the football. Plaintiff had been sitting or crouching for five minutes when defendant, going out for a pass, ran him over, falling on plaintiff's back, crushing his head and chest to the ground between his legs. Tim Slaughterback said "watch out" just before the collision, too late to allow plaintiff to get out of the way.

Defendant, however, related that plaintiff was hurt during the tackle-the-football game. By his account, plaintiff was trying to catch or pick up the football when defendant, trying to tackle him, hit him head on, causing the injuries. Two witnesses for defendant testified that plaintiff was injured after he had picked up the football during the game, was chased by defendant, and was caught and tackled from behind.

Dr. James Wilson testified that plaintiff's injuries, a compression fracture of the L1 and L3 vertebrae, were caused by a "pretty severe force." He said the force

causing the injury was "either a direct axio force straight down" or a "flexion" force bending plaintiff forward. Plaintiff's father testified that he overheard defense counsel ask defendant "about the dirt pile in the Cronin yard" during a recess in the trial. Defendant's response, according to plaintiff's father, was " 'I seem to remember him sitting there, but I wasn't watching him, I was watching the ball.' " The credibility of one of the defendant's occurrence witnesses was reduced when it was brought out, on cross-examination, that defendant, in a prior recorded statement, had quoted this witness as saying he was not present at the time of the collision. The credibility of the second defense occurrence witness was also reduced when he readily pointed out, on cross-examination, the place where plaintiff was tackled, because in a prior statement he had been unable to remember where the tackle happened. (On redirect examination, he said he marked only the general, not exact, location of the tackle.)

Regarding the third issue, plaintiff and Tim Slaughterback related that plaintiff was sitting just to the southeast of the dirt pile, facing the picnic table, while seated or crouched, when defendant collided with him. One defense witness placed plaintiff near the dirt pile when he was tackled; the other and the defendant placed plaintiff further away from the dirt pile and picnic table.

The jury viewed a series of pictures which generally showed the backyard area of play. The occurrence witnesses diagramed their version of events for the jury in not-to-scale drawings. These exhibits are part of the record on appeal, have been examined, and support the summary of the evidence just rendered.

Defendant's first contention on appeal is that the wilful-and-wanton-misconduct standard, rather than the negligence standard, should have been applied. It is true that our appellate court has held that participants in organized sporting events can only be held liable under

that standard. (See *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723; see also *Stewart v. D. & R Welding Supply Co.* (1977), 51 Ill. App. 3d 597; *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212.) There is a fundamental problem with this argument, however, since there was substantial credible evidence here that plaintiff was neither a participant in a game nor located within an area where a game was or could potentially be in progress. Thus we are not faced with a situation where the evidence necessarily indicates that the person injured was located outside the boundary of the game but otherwise within an area naturally encompassed by the game. The rival theories of where the game was played, whether plaintiff was participating, and where and how plaintiff was injured were squarely presented to the jury by opposing counsel. The jury evidently found plaintiff's theory more credible. We need not, therefore, consider whether the appellate court cases cited above are correct. Instead, we merely hold that those cases on their own terms are inapplicable here.

The second argument advanced here is that defendant owed no duty of care to plaintiff to refrain from attempting to catch the football in the manner in which he did. It is true, as defendant argues, that the foreseeability of an occurrence does not *ipso facto* create a duty to take all measures necessary to prevent its occurrence. In *Lance v. Senior* (1967), 36 Ill. 2d 516, a leading case, plaintiff was a nine-year-old boy who suffered from hemophilia. His condition was known to defendants, and the complaint alleged that, while he was an overnight guest in defendants' home, the defendants negligently permitted and allowed him to play with a needle which got into plaintiff's throat and was thereafter sucked into the inner part of plaintiff's lung. This court held that the complaint was properly dismissed by the trial court, noting that "whether the law imposes a duty does not depend upon foresee-

ability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account." (36 Ill. 2d 516, 518; see also Turkington, *Foreseeability and Duty Issues in Illinois Torts; Constitutional Limitations to Defamation Suits Under Gertz,* 24 De Paul L. Rev. 243, 254-55 (1975).) The court held that the risk that a nine-year-old boy would swallow or ingest a needle was minimal. Nor did the allegation that defendants knew of plaintiff's condition lead to a contrary result, for it suggested that plaintiff would have been taught to guard against the special hazards to which he was subject. Finally, the burden of imposing such a duty on defendants would be a heavy one, requiring "intimate and constant surveillance." 36 Ill. 2d 516, 519. See also *Mieher v. Brown* (1973), 54 Ill. 2d 539, 544-45; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29; *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 99; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375-78.

Applying that analysis here, we find that defendant owed plaintiff a duty. The burden of selecting an area of play free from the presence of nonparticipating individuals was particularly slight in this case, for there was more than a sufficient area to play catch with a football away from the picnic table area. Defendant introduced no evidence that he was playing in an appropriate area of the yard but was led out of that area by an errant pass. It is not only foreseeable, but even likely, that an individual, with his eye on a football being passed to him, running in an area congested with nonparticipants, will run into and injure one or more of them. Under the facts here, defendant should have known this. Finally, the magnitude of the harm which can be caused by an older and stronger and heavier person running into or over a younger and smaller person renders this case particularly appropriate to warrant the imposition of a duty of care.

The remaining issues, then, are whether the jury could properly have determined that defendant breached his duty to act with reasonable care, whether that breach caused plaintiff's injury, and whether plaintiff was free from contributory negligence. The evidence here, considered under the *Pedrick* test (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510; see *Bauer v. Johnson* (1980), 79 Ill. 2d 324, 332-33), supports the jury determination on these issues. The jury here could reasonably conclude that plaintiff was sitting or crouching in an area understood to be inappropriate for playing catch with a football. It could further conclude that plaintiff was reasonable in sitting or crouching there and that defendant unreasonably decided to go out for a pass in that area. The known presence of potato chips on the picnic table and nonparticipants in that vicinity gives rise to the reasonable inference that defendant should have known to stay clear of that area while playing. Finally, it could conclude that plaintiff was not participating in the game when he was hurt, and that he was in an area which he could reasonably assume was safe from football activity. We have examined the authorities cited by defendant, and they do not persuade us that the foregoing analysis is unsound. No argument was presented as to causation.

Defendant has purportedly accepted, for purposes of the appeal, plaintiff's version of the facts, in arguing that he is not liable. He has argued in effect that he was reasonably playing catch and that keeping one's eye on the ball in such a situation is not negligence. It is evident, however, that defendant presented a vastly different theory at trial, where he contended that plaintiff was a participant in a *boundaryless* game when he was injured. In proceeding on that theory at trial, defendant did not present evidence which would permit us to accept plaintiff's theory of the case but nevertheless conclude that defendant was acting reasonably. For example, defendant introduced no evi-

dence that he was reasonably playing catch, after the tackle-the-football game, in an appropriate area of the yard, and the evidence introduced by plaintiff would lead to the drawing of conflicting inferences on that question. Acceptance of defendant's argument here, therefore, would require this court to reweigh the evidence based upon defendant's new theory on appeal, when the jury has had no opportunity to do so, and in the absence of supporting evidence of defendant's reasonable care. While we will not hesitate to reverse a verdict unsupported by the evidence, here the jury apparently regarded defendant's theory of the case and his testimony as uncandid, and was given no other exculpatory evidence. Under these circumstances, the rule prohibiting the presentation of a new theory on appeal comes into play. *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147; *Brown v. Lober* (1979), 75 Ill. 2d 547, 556.

Sports are important, as both parties acknowledge. This court does not desire to frustrate "youth at play." But the social interest in encouraging such activity cuts both ways, for plaintiff here was seriously injured and was unable to participate in sporting activity for at least a year and was required to wear a back brace for six months.

Clearly, it may be negligent to play in areas inappropriate for such activity. It may also be negligent to sit inattentive in an area where a game is being played. We cannot reverse the verdict here, because the jury clearly resolved conflicting evidence and determined that plaintiff's actions were reasonable and that defendant's were not. Therefore the judgment is affirmed.

*Judgment affirmed.*