CHARLES R. OLAF, Plaintiff-Appellant, v. CHRISTIE CLINIC ASSOCIATION *et al.*, Defendants-Appellees.

Fourth District   No. 4—89—0894

Opinion filed July 26, 1990.

Ronald E. Boyer, of Boyer & Thompson, Ltd., of Watseka, for appellant.

Lorna K. Geiler, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellee Christie Clinic Association.

Joseph D. Pavia, of Kirtley-Pavia-Marsh, P.C., of Urbana, for appellee Personal Care HMO.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff brings this appeal alleging the trial court erred in granting defendants' motions for summary judgment. We affirm.

Plaintiff, Dr. Charles R. Olaf, filed a complaint against defendants, Christie Clinic Association (Christie) and Personal Care HMO (Personal Care), alleging the agreement between himself and Christie was wrongfully terminated and his patients were unlawfully notified. In 1984, Christie entered into a contract with Dr. Olaf wherein Dr. Olaf became associated with Christie as a provider of health services for Personal Care at his practices in Paxton and Cissna Park. The con-

tract provided Dr. Olaf was to be paid for his medical services to subscribers of Personal Care by Christie and the contract could be terminated by either party by written notice given at least 90 days in advance of termination. The contract provided for annual review and recited Dr. Olaf "elects during the term of this agreement to participate on an exclusive basis with CHRISTIE in said prepaid health services programs."

After several years as a provider for Personal Care, Dr. Olaf also became a provider for CarleCare, a competing health maintenance organization (HMO). On June 5, 1987, Christie notified Dr. Olaf it would invoke the 90-day termination clause of their contract unless he disassociated himself from CarleCare. When Dr. Olaf refused to terminate his services for CarleCare, Personal Care mailed to its participants, who were also patients of Dr. Olaf, a letter which stated effective September 3, 1987, Dr. Olaf will no longer be a participating physician with Personal Care HMO. The letter asked the participants to select a new primary-care physician as soon as possible.

Dr. Olaf filed suit claiming the actions of Christie and Personal Care had resulted in the loss of patients and the termination of his medical practice. The complaint alleged a conspiracy existed between Christie and Personal Care which had the purpose of destroying Dr. Olaf's medical practice and lessening competition.

Defendants filed answers to the complaint alleging they were justified in terminating the contract with Dr. Olaf and in sending letters to Dr. Olaf's participating patients. In response to Christie's and Personal Care's motion to strike the complaint, counsel for Dr. Olaf stated the complaint should be understood to state a single cause of action for the conspiracy of Christie and Personal Care to tortiously interfere with the contractual relationship between Dr. Olaf and his patients. The trial court amended the complaint accordingly.

Defendants filed motions for summary judgment. Personal Care's motion was accompanied by affidavits which explained and justified the action taken toward Dr. Olaf. Attached to Dr. Olaf's response to the motions for summary judgment were unverified letters and memoranda from Christie and Personal Care. Dr. Olaf did not submit any counteraffidavits in addition to this response. The trial court allowed defendants' motions for summary judgment. The trial court found there was no genuine issue of material fact and that Dr. Olaf had violated the terms of his agreement with Christie.

■■ Summary judgment is properly granted only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving

party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 502 N.E.2d 1295.) In making this determination, the court is to construe the evidence strictly against the moving party and liberally in favor of the opponent. *Spancrete of Illinois, Inc. v. Brickman* (1979), 69 Ill. App. 3d 571, 388 N.E.2d 47.

■ Although a party is not required to prove his case at summary judgment, some facts must be presented to support the elements of its claim. If the party moving for summary judgment supplies evidentiary facts which, if uncontradicted, would entitle him to judgment, the opposing party cannot rely upon his complaint or answer alone to raise issues of material fact. (*In re Estate of Garbalinski* (1983), 120 Ill. App. 3d 767, 458 N.E.2d 1065.) Thus, the consequence of failing to file a counter-affidavit is that any statements in the affidavits supporting the motion for summary judgment stand as admitted and must be taken as true. *Kellerman v. Mar-Rue Realty & Builders, Inc.* (1985), 132 Ill. App. 3d 300, 476 N.E.2d 1259.

■ Here, Personal Care's motion for summary judgment was supported by verified affidavits. The affidavit of Ronald H. Dearing, medical director of Christie Clinic Association, explained Christie's contract with Personal Care and with Dr. Olaf. On June 5, 1987, and August 13, 1987, Dearing mailed a letter to Dr. Olaf stating Dr. Olaf had violated the exclusive-service term of his contract with Christie. Dearing notified Dr. Olaf Christie would be terminating their agreement with him in 90 days unless he complied with the exclusive-service term. According to Dearing, Dr. Olaf never notified Christie he would comply.

The affidavit of Larry Good, development director of Personal Care HMO, explained the relationship of Personal Care with Christie and Dr. Olaf. On August 10, 1987, Good spoke with Dr. Olaf regarding Deering's letter of June 5, 1987. Dr. Olaf told Good he did not intend to comply with the exclusive-service provision of the Christie contract. Good told Dr. Olaf Personal Care would have to notify its members who were patients of Dr. Olaf that Dr. Olaf would no longer be a participating physician and advise them to select another primary-care physician. Dr. Olaf's only reply was that Personal Care should be sure not to tell his patients he had terminated the agreement. On August 12, 1987, Personal Care sent letters to its members who had listed Dr. Olaf as their primary-care physician informing them Dr. Olaf would no longer be a participating physician with Personal Care and advising them to select a new primary-care physician.

Last, the affidavit of Alan L. Mytty, president of Personal Care HMO, also explained Personal Care's relationship with Christie and

Dr. Olaf. Mytty stressed the sole basis under which Dr. Olaf provided services to members of Personal Care was through his contract with Christie. By notifying its members Dr. Olaf would no longer be a participating physician, Personal Care was not attempting to compete with Dr. Olaf, but was instead attempting to comply with its service certificate and the requirement of Illinois law that there must be a written contract for a physician to serve as a participating provider to an HMO.

Dr. Olaf failed to file a counteraffidavit. Dr. Olaf's response to the motions for summary judgment stated there were issues of material fact to be resolved, without specifying what these facts were. The attachments to Dr. Olaf's response were unverified and failed to qualify as counteraffidavits pursuant to Supreme Court Rule 191(a). (107 Ill. 2d R. 191(a).) Absent contradiction, the trial court properly admitted the statements in Personal Care's affidavits and found no genuine issue of material fact.

■ The trial court correctly found Christie and Personal Care were entitled to judgment as a matter of law. The elements of the tort of interference with contractual relations include (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of a contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 545 N.E.2d 672.

■ An enforceable contract did not exist between Dr. Olaf and his patients. Unlike the right to receive benefits of a contract, the right to engage in a physician-patient relationship is not absolute but is instead terminable at will. (*Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 480 N.E.2d 1176.) A contrary holding would restrain normal competition in the marketplace and, in this instance, incorrectly define the physician-patient relationship. Perhaps Dr. Olaf could have pleaded tortious interference with his prospective economic advantage. Such a pleading would not have required proof of an enforceable contract between Dr. Olaf and his patients, but only a reasonable expectancy of a future economic advantage from the relationship. (*Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1973), 16 Ill. App. 3d 709, 306 N.E.2d 549.) However, the success of such an action would be questionable as the present facts show Dr. Olaf's relationship with Personal Care members is contingent upon his contract with Christie, which can be terminated without cause.

Personal Care was also justified in notifying the affected patients of Dr. Olaf's termination as a primary-care physician. Personal Care had an obligation to notify its members Dr. Olaf was no longer a participating physician. If Personal Care had not informed its members of Dr. Olaf's termination, the members would have continued to expect Personal Care to provide coverage for his services. Clearly, Personal Care was privileged in making such notification, and Dr. Olaf has not set forth any factual allegations from which it can be inferred Personal Care's conduct exceeded this privilege. See *HPI Health Care*, 131 Ill. 2d at 158, 545 N.E.2d at 678.

The court need not address Dr. Olaf's allegations regarding restraint of trade and restricted competition. Pursuant to defendants' motion to strike, counsel for Dr. Olaf informed the court the only action he was pursuing was that of tortious interference with a contractual relationship between Dr. Olaf and his patients. The trial court amended the complaint accordingly. Plaintiff's failure to raise these issues at the trial court level or to properly plead them waives them for purposes of review.

Affirmed.

LUND and McCULLOUGH, JJ., concur.