SEAN PFISTER, Plaintiff-Appellant, v. TERRY SHUSTA, Defendant-Appellee.

Fourth District   No. 4—93—0070

Argued July 21, 1993.—Opinion filed January 27, 1994.

GREEN, J., dissenting.

Mike McElvain (argued), of Law Office of Mike McElvain, of Bloomington, for appellant.

Dawn L. Wall (argued), of Costigan & Wollrab, P.C., of Bloomington, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Sean Pfister, brought this action for an injury he suffered while he and defendant, Terry Shusta, were kicking an aluminum can in a college dormitory lobby. The trial court granted summary judgment for defendant, ruling plaintiff's complaint failed to state a negligence cause of action. The trial court held the can-kicking activity was a contact sport and plaintiff was accordingly required to allege and prove wilful and wanton conduct, not mere negligence. We reverse.

Plaintiff and defendant were both students at Illinois State University on February 9, 1990, when they attended a party held at Watterson Towers dormitory. Plaintiff, defendant, and two other

students eventually left the party to go to the lobby where they waited for friends. While waiting, they began kicking a crushed aluminum can which was on the floor. They established teams with plaintiff and defendant on opposite sides and goals at each end of the hallway, "kind of like hockey."

Defendant stated in a deposition that plaintiff "pushed" him. Defendant then pushed plaintiff off of him, causing plaintiff to fall backward against a wall on which there was a glass door which encased a fire extinguisher. As a result, plaintiff's hand went through the glass door and was injured. At the time of the incident "there was a lot of physical contact, pushing each other back and forth to get control of the can," which was between the parties' feet. Plaintiff stated in his deposition that he was moving toward the can, near the wall with the glass door, when defendant pushed him from behind. Plaintiff put his hand up "for support" and then it went through the glass.

Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Gresham v. Kirby* (1992), 229 Ill. App. 3d 952, 954, 595 N.E.2d 201, 203; *Olaf v. Christie Clinic Association* (1990), 200 Ill. App. 3d 191, 193-94, 558 N.E.2d 610, 612; *Cronic v. Doud* (1988), 168 Ill. App. 3d 665, 668, 523 N.E.2d 176, 178.) It is a question of law whether a legal duty of care is owed by a defendant to a plaintiff. *Benner v. Bell* (1992), 236 Ill. App. 3d 761, 764-65, 602 N.E.2d 896, 898; *Gresham*, 229 Ill. App. 3d at 955, 595 N.E.2d at 203; W. Keeton, Prosser & Keeton on Torts § 37, at 236 (5th ed. 1984).

Parties generally owe each other the duty to refrain from negligence, that is, the duty to act reasonably under all the circumstances, but an exception is said to exist when the parties are engaged in a contact sport. That exception provides that a plaintiff injured while participating in a contact sport may only recover from another participant if the injury was due to the other's wilful or wanton conduct. See *Keller v. Mols* (1987), 156 Ill. App. 3d 235, 237, 509 N.E.2d 584, 586 (plaintiff may not recover for injuries incurred during an informal floor hockey game where defendant's conduct was merely negligent); *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723, 727, 406 N.E.2d 157, 159-60 (plaintiff must show wilful conduct or reckless disregard of plaintiff's safety to recover for injury during physical education class basketball game).

The seminal case for the contact sports exception is *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212, 334 N.E.2d 258. However,

*Nabozny* is ambiguous on the appropriate theory of liability for participants in contact sports. (See Note, *Participant's Liability for Injury to a Fellow Participant in an Organized Athletic Event*, 53 Chi.-Kent L. Rev. 97, 108 (1976).) *Nabozny* held "a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of [others]." (*Nabozny*, 31 Ill. App. 3d at 215, 334 N.E.2d at 261.) The claim which was allowed to stand in *Nabozny* was one for ordinary negligence. (*Nabozny*, 31 Ill. App. 3d at 213, 334 N.E.2d at 259.) Some commentators have observed that *Nabozny* may have established an ordinary negligence standard for participants of contact sports. (See Note, *Injuries Resulting from Nonintentional Acts in Organized Contact Sports: The Theories of Recovery Available to the Injured Athlete*, 12 Ind. L. Rev. 687, 701-02 (1979) (the *Nabozny* court "enunciated nothing more than an ordinary negligence standard of conduct, narrowly tailored to further the policy considerations unique to the activity to which it is applied"); Note, *Participants Liability for Injury to a Fellow Participant in an Organized Athletic Event*, 53 Chi.-Kent L. Rev. 97, 105 (1976) ("[o]ne interpretation is that *Nabozny* enunciates an ordinary negligence standard of conduct").) Even with a negligence standard, the fact that the parties are engaged in a sport may be an important circumstance to be considered in determining what is reasonable.

Other commentators have viewed *Nabozny* as setting forth a recklessness standard. (See Narol, *Sports Torts: Emerging Standard of Care*, 26 Trial 20 (1990); Notes, *Sports Violence: A Matter of Societal Concern*, 55 Notre Dame L. 796, 802 (1980) (the *Nabozny* court "rejected the mere negligence standard and opted for the 'reckless disregard' standard").) As mentioned, some Illinois courts have interpreted *Nabozny* as setting out a recklessness or wilful and wanton conduct standard (see *Keller*, 156 Ill. App. 3d at 237, 509 N.E.2d at 586; *Novak v. Virene* (1991), 224 Ill. App. 3d 317, 320, 586 N.E.2d 578, 579; *Oswald*, 84 Ill. App. 3d at 727, 406 N.E.2d at 159-60), as have courts in other jurisdictions (see *Bangert v. Shaffner* (Tex. Ct. App. 1993), 848 S.W.2d 353, 356; *Marchetti v. Kalish* (1990), 53 Ohio St. 3d 95, 97, 559 N.E.2d 699, 701; *Dotzler v. Tuttle* (1990), 234 Neb. 176, 180, 449 N.W.2d 774, 778; *Gauvin v. Clark* (1989), 404 Mass. 450, 454, 537 N.E.2d 94, 97; *Ross v. Clouser* (Mo. 1982), 637 S.W.2d 11, 14).

The rule of the Restatement of Torts is that one who consents to conduct "cannot recover in an action of tort for the conduct or for harm resulting from it." (Restatement (Second) of Torts § 892A(1), at 364 (1979).) A plaintiff who has entered voluntarily into some relation with defendant which he knows to involve a risk is regarded as

tacitly or impliedly agreeing to relieve the defendant of responsibility. (Restatement (Second) of Torts § 496A, Comment *c* (2), at 561 (1965).) The Restatement makes it clear there cannot be recovery for either intentional or negligent conduct sanctioned by game rules. The key question under the Restatement is whether the contact is permitted by the rules or usages of the game. Restatement (Second) of Torts § 50, Comment *b*, at 86 (1965) ("Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages").

The rule of the Restatement is preferable to a rule that wilful and wanton conduct, but only wilful and wanton conduct, may result in liability where the parties are engaged in a contact sport. Under the Restatement, intentional conduct which is within the rules or usages of the game might not result in liability; on the other hand, negligent conduct not within the rules or usages of the game may result in liability. In a baseball game a runner attempting to score may anticipate harm if he intentionally collides with a catcher who is concentrating on taking a throw, but there will be no liability if such a collision is within the usages of the game. On the other hand, a player who angrily and negligently throws a bat after he has struck out may be liable if that conduct is not within the usages of the game. Injection of the wilful and wanton concept into these cases does not add clarity or aid analysis. The focus should be on whether the conduct was within the rules and usages of the game, not whether the conduct falls within the imprecise definition of wilful and wanton.

Recently, the Wisconsin Supreme Court in *Lestina v. West Bend Mutual Insurance Co.* (1993), 176 Wis. 2d 901, 501 N.W.2d 28, rejected the recklessness standard in an action by a soccer player who was injured by a player from the opposing team. The *Lestina* court held that the negligence standard, properly understood and applied, accomplishes the objectives sought by the courts adopting the recklessness standard. The court held that in determining whether a player's conduct constituted actionable negligence, the fact finder should consider various material factors, including the rules and regulations governing the sport, the generally accepted customs and practices of the sport, and the risks inherent in the game and those that are outside the realm of anticipation. *Lestina*, 176 Wis. 2d at 913, 501 N.W.2d at 33.

This court in *Stewart v. D&R Welding Supply Co.* (1977), 51 Ill. App. 3d 597, 366 N.E.2d 1107, refused to simply ask whether a contact sport was involved or whether the conduct was wilful and wanton. Although *Stewart* noted that the duty of care owed an umpire is the same as that owed another player, it allowed an umpire's cause of

action to stand where the umpire was hit by an oversized bat ring which slipped off a baseball bat during warm-up. This court held that "[p]laintiff did not consent to being hit by the bat ring under any circumstances." (*Stewart*, 51 Ill. App. 3d at 600, 366 N.E.2d at 1109.) While *Stewart* involved a wilful and wanton count, the court analyzed the issue not in terms of whether baseball is a contact sport, but in terms of whether there was any consent on the part of the umpire to bodily contacts permitted by the game's rules or usages.

The supreme court in *Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 396, 419 N.E.2d 913, 916, did not consider whether cases holding contact sports participants liable under the wilful and wanton standard were correctly decided, but held those cases inapplicable where the plaintiff was not a participant in a game at a picnic and was not in an area where the game could be potentially in progress. The court noted that it may be negligent to play in areas inappropriate for such activity, and it may also be negligent to sit inattentively in an area where a game is being played. *Osborne*, 84 Ill. 2d at 399, 419 N.E.2d at 918.

We would not limit the Restatement rule to formally organized sporting activities. *Keller* involved 14-year-old boys who were playing "floor hockey" on a neighbor's patio. (*Keller*, 156 Ill. App. 3d at 235-36, 509 N.E.2d at 585.) Children playing baseball in a backyard should be allowed to engage in conduct within the rules and usages of the game as do major leaguers, although there will be differences. As *Osborne* held, it may be negligent to play in areas inappropriate for such activity, something major leaguers never have to worry about. On the other hand, although the Restatement rule is not limited to organized sporting activities, a party should not be immunized from liability for roughhousing or barfighting just because he is able to describe that conduct as a game. There is some advantage to formality. The more organized the game the easier it will be to show that particular conduct was authorized by rules or usages.

Applying the *Keller* rule to this case would require us to arbitrarily determine whether this "game" fit within the definition of "contact sport." If it did, defendant would have no liability for negligence even though there were no rules or usages authorizing his conduct. If we were to apply *Keller* to this case, we would hold that no contact sport, no sport at all, was being played here, a view supported by the fact there were no rules or usages authorizing defendant's conduct. We believe, however, the better rule is that of the Restatement. Applying the Restatement and *Osborne*, a number of factual issues exist, including the following: (1) was this a game? (2) was it played in an appropriate area? (3) did the game have rules

or usages? (4) did the rules or usages permit the bodily contact which occurred? and (5) did the injury to plaintiff arise from the contact which was permitted by the rules? Accordingly, summary judgment was improper. For reasons stated, we reverse the judgment of the circuit court of McLean County and remand for further proceedings.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE GREEN, dissenting:

I appreciate the care taken by the majority to limit the scope of the holding to informal play in an area not appropriate for that type of play. However, I conclude that lines are too difficult to draw. The key factor in the instant case and all of the cited Illinois cases is that when the participants involve themselves in play which inherently involves physical contact, they recognize the dangers which might arise when one participant *negligently* but not *wilfully* and *wantonly* makes contact greater than that permitted by the rules or customs of the activity. The exposure of one participant to liability to another participant for merely negligent bodily contact, even under the disorganized situation here, will cause more harm than good.

The activity involved here was no less a game than that where no duty of due care was imposed in *Keller*. Indeed, the game "kind of like hockey" being played here was very similar to the floor hockey game involved there. The place where the game was being played here was less appropriate than that in *Keller*, but a great deal of game-like activity takes place in areas which have dangerous aspects. In many gymnasiums, the open distance behind the basket is unsafely short. At other times, spectators are placed too close to a basketball court. Should one player who negligently commits the foul of charging in such a way as to knock another player into such an impediment be liable to the other player? I very strongly believe that no such liability should be imposed.

The majority also considers the nature of the contact involved. Vince Lombardi, the legendary Green Bay Packers coach, is reported to have said something to the effect that "dancing is a contact sport; football is a violent sport." However, in common understanding, football, wrestling, and boxing, among others, are clearly recognized as contact sports. Basketball, hockey, and soccer all permit some bodily contact and, in actual practice, more contact is permitted than a reading of the rules would indicate. In all of the above sports, players regularly commit contact beyond that which is permitted by

the rules even as applied. In basketball, such an illegal contact is described as a foul for which a sanction is imposed. Sometimes the player fouled is injured. This is to be expected. If every time a negligent foul resulted in injury, and liability was imposed, the game of basketball as we know it would not be played.

Whether we are considering an organized, supervised game conducted by a school or a disorganized back alley or open lot game, imposing liability upon one who inflicts injury upon another participant through a negligent, unintentional violation of the rules will have a highly undesirable chilling effect upon such participation. Any such liability must be placed upon the actor's conduct being worse than mere negligence. No Illinois court has imposed such liability upon mere negligence. I am unimpressed by citation of a decision of a court of another State which does so when I think the logic behind it is ill-founded.

The *Nabozny* court made clear it was not imposing liability for merely negligent conduct when it stated as follows:

> "It is our opinion that a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury." (*Nabozny*, 31 Ill. App. 3d at 215, 334 N.E.2d at 261.)

Defendant was not charged with such conduct here. The *dicta* of *Osborne* may indicate that both plaintiff and defendant were negligent in playing in the informal game near a glass door, but their negligence was equal in that respect. The more direct cause of plaintiff's injury arose from an, at most, negligent violation of the implied rules of the game.

The circuit court properly granted summary judgment to defendant. I would affirm that judgment.