JOHN SAVINO, Plaintiff-Appellant, v. SCOTT ROBERTSON, Defendant-Appellee.

First District (2nd Division)    No. 1—93—1801

Opinion filed June 30, 1995.—Rehearing denied September 14, 1995.

Patrick Mahoney & Associates, P.C., and Levin, McParland, Phillips, Leydig & Haberkorn (Gerald Haberkorn, of counsel), both of Chicago, for appellant.

Chuhak & Tecson, P.C., of Chicago (Rick Hammond and Alan R. Dolinko, of counsel), for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Plaintiff John Savino brought a negligence action against defendant Scott Robertson after plaintiff was struck and injured in the eye by a hockey puck shot by defendant. The trial court granted defendant's subsequent motion for summary judgment, but allowed

plaintiff to amend the complaint to allege that defendant's conduct was wilful and wanton. Upon another motion by defendant, the trial court granted summary judgment in favor of defendant on the amended complaint. On appeal from both orders, plaintiff raises the following issues for our consideration: (1) whether a plaintiff must plead and prove wilful and wanton conduct in order to recover for injuries incurred during athletic competition; and (2) whether there was a genuine issue of material fact as to whether defendant's conduct was wilful and wanton in injuring plaintiff. We affirm.

Plaintiff and defendant were teammates in an amateur hockey league sponsored by the Northbrook Park District. Plaintiff and defendant also had met in various "pick-up" games prior to playing in the Northbrook league, but they were neither friends nor enemies. On April 20, 1990, plaintiff and defendant were warming up prior to a game. During warm-up, teams skate around and behind their goal on their half of the ice. Plaintiff was on the ice, "to the right of the face off circle in front of the net." Defendant shot a puck that missed the goal and hit plaintiff near the right eye. Plaintiff lost 80% vision in that eye.

On September 11, 1990, plaintiff filed a one-count complaint against defendant alleging that defendant was negligent and failed to exercise ordinary care in shooting the puck. Specifically, plaintiff alleged that defendant (a) failed to warn plaintiff that he was going to shoot the puck toward plaintiff; (b) failed to wait until a goalie was present before shooting the puck; (c) failed to warn others that he was shooting the puck; (d) failed to follow the custom and practice of the Northbrook Men's Summer League which required the presence of a goalie at the net before shooting; and (e) failed to keep an adequate lookout.

Defendant filed his answer to the complaint and, after interrogatories and discovery depositions were taken, defendant moved for summary judgment. (735 ILCS 5/2—1005 (West 1992).) Defendant argued that he was entitled to judgment as a matter of law because plaintiff alleged ordinary negligence. To be entitled to relief for injuries incurred during athletic competition, defendant argued, plaintiff had to plead and prove wilful and wanton conduct or conduct done in reckless disregard for the safety of others. The trial court granted defendant's motion for summary judgment and denied plaintiff leave to amend count I of the complaint. Upon reconsideration, the trial court granted plaintiff leave to file an amended complaint to allege a count II based on wilful and wanton conduct.

Defendant filed his answer to plaintiff's subsequent amended complaint and the parties engaged in discovery as to count II of that

complaint. Defendant later filed another motion for summary judgment. Defendant argued that, due to plaintiff's admission that his injury was caused by an accident, plaintiff's case presented no genuine issue of material fact with regard to defendant's alleged wilful and wanton conduct. Defendant further argued that plaintiff could not show that defendant's action was anything more than an ordinary practice shot normally taken during warm-up sessions.

Plaintiff, on the other hand, argued in his response to defendant's motion that ordinary negligence should be the standard applied to his case rather than wilful and wanton conduct, because, since the hockey game had not officially begun, he was not a participant at the time of his injury. Plaintiff attached the affidavit of Thomas Czarnik, a hockey coach at Deerfield High School, to his response. According to Czarnik, it was the custom of amateur hockey leagues to wait until the goalie was present in the net before any practice shots were taken.

Defendant also took Czarnik's deposition. In that deposition, Czarnik described himself as a 15-year acquaintance of plaintiff. He and plaintiff grew up in the same neighborhood and his brother had been plaintiff's schoolmate. Plaintiff's brother Mike also was a friend of one of Czarnik's brothers. Czarnik further stated that he had been a hockey player since childhood and had coached various youth hockey organizations. The Northbrook Hockey League played what was known as "non-check" hockey. Non-check meant noncollision. However, there was still bodily contact in non-check hockey and, in Czarnik's opinion, hockey, regardless of the type, is a contact sport. Czarnik had no knowledge of the rules and usages of the Northbrook Hockey League and had no firsthand knowledge of the incident.

Czarnik also stated that he had seen players in adult hockey leagues take shots at open goals, that is, goals without a goalie present, during the warm-up period and that he had taken shots at open goals. According to Czarnik, the warm-up period was a part of the game of hockey even though the players are not technically playing a game. Czarnik considered plaintiff's injury an accident.

Defendant attached excerpts of Czarnik's deposition in support of his reply to plaintiff's response to the motion for summary judgment. Defendant argued that Czarnik's responses demonstrated that plaintiff could not show, as a matter of law, that defendant's conduct was wilful or wanton. Defendant also contended that Czarnik was not a proper expert to render an opinion in this case, given his lack of familiarity with adult hockey leagues and lack of knowledge of the rules and usages of the Northbrook Summer Men's Hockey League. The trial court granted defendant's motion for summary judgment.

Plaintiff now appeals from both orders of the trial court granting summary judgment in favor of defendant.

Our review of the trial court's grant of summary judgment is *de novo*. (*Superior Investment & Development Corp. v. Devine* (1993), 244 Ill. App. 3d 759, 767, 614 N.E.2d 302.) The granting of summary judgment is proper when the pleadings, depositions and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (*Estate of Henderson v. W.R. Grace Co.* (1989), 185 Ill. App. 3d 523, 527, 541 N.E.2d 805.) In determining whether summary judgment is proper, the court must construe the evidence in a light most favorable to the nonmovant and strongly against the movant. *Schroth v. Norton Co.* (1989), 185 Ill. App. 3d 575, 577, 541 N.E.2d 855.

Plaintiff first argues that he should not have been required to plead wilful and wanton conduct in this case because he was not actually "playing" the game of hockey at the time his injury occurred, but rather was participating in the warm-up practice.

The seminal case on this issue is *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212, 334 N.E.2d 258. In *Nabozny*, the plaintiff was the goalkeeper for a teenage soccer league and the defendant was a forward from an opposing team. The game's rules prevented players from making contact with the goalkeeper while he is in possession of the ball in the penalty area. (*Nabozny*, 31 Ill. App. 3d at 214.) During the game, the ball was passed to the plaintiff while he was in the penalty area. The plaintiff fell onto his knee. The defendant, who had been going for the ball, continued to run towards the plaintiff and kicked the plaintiff in the head, causing severe injuries. (*Nabozny*, 31 Ill. App. 3d at 214.) The trial court directed a verdict in favor of the defendant, holding that as a matter of law the defendant was free from negligence (owed no duty to the plaintiff) and that the plaintiff was contributorily negligent.

In reversing the trial court, the *Nabozny* court held that when athletes engage in organized competition, with a set of rules that guides the conduct and safety of the players, "a player is then charged with a legal duty to every other player on the field to refrain from conduct proscribed by a safety rule." (*Nabozny*, 31 Ill. App. 3d at 215.) The court then announced the following rule:

> "It is our opinion that a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury." *Nabozny*, 31 Ill. App. 3d at 215.

Illinois courts have construed *Nabozny* to hold that a plaintiff-participant injured during a contact sport may recover from another player only if the other's conduct was wilful or wanton. (*Novak v. Virene* (1991), 224 Ill. App. 3d 317, 586 N.E.2d 578; *Keller v. Mols* (1987), 156 Ill. App. 3d 235, 509 N.E.2d 584; *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723, 406 N.E.2d 157.) Plaintiff contends, however, that decisions subsequent to *Nabozny* have misconstrued the court's holding in that case. According to plaintiff, *Nabozny* is to be applied only to conduct during a game because *Nabozny* "involved an injury that occurred during a game and therefore, it implicitly recognizes a distinction with pre-game injuries."

Our research has failed to reveal any Illinois case that addresses the precise distinction plaintiff raises here. However, we note that a New York appellate court considered a similar argument in *O'Neill v. Daniels* (1987), 135 A.D.2d 1076, 523 N.Y.S.2d 264. In *Daniels*, the plaintiff was injured when he was struck in the eye by a softball thrown by the defendant during warm-up activities prior to an amateur game. The plaintiff brought a negligence action against the defendant. The trial court granted the defendant's motion for summary judgment and dismissed the plaintiff's complaint. The plaintiff appealed, contending that the trial court erred in not finding the defendant negligent based on its conclusion that the plaintiff assumed the risk of a known or foreseeable injury.

In affirming the trial court, the *Daniels* court began with a statement that assumption of risk was no longer an absolute defense with the enactment of the comparative negligence statute. The defendant's duty of care, the court held, must be evaluated by considering the risks the plaintiff assumed and how those assumed risks qualified the defendant's duty. Turning to the facts, the court found that the plaintiff's participation in the warm-up was voluntary and that, in light of this fact, its concern must be solely addressed to the scope of that consent. "The question of whether the consent was an informed one," the court stated, "includes consideration of the participant's general knowledge and experience in the activity." (*Daniels*, 135 A.D.2d at 1077, 523 N.Y.S.2d at 265.) The court held that the facts demonstrated that the plaintiff understood and accepted the dangers of the sport, "including those resulting from carelessness during 'warm-up' activities." *Daniels*, 135 A.D.2d at 1077, 523 N.Y.S.2d at 265.

■ Illinois has enacted a modified comparative fault statute. (735 ILCS 5/2—1116 (West 1992).) The enactment of this statute, however, has no effect on express assumption of risk, where a plaintiff expressly assumes the dangers and risks created by the activity or a

defendant's negligence, or on primary implied assumption of risk, where a plaintiff knowingly and voluntarily assumes the risks inherent in a particular situation or a defendant's negligence. *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 435, 481 N.E.2d 1037.

In the case at bar, we believe that plaintiff was no less a participant in a team sport merely because he was engaged in warm-up activities at the time of his injury. However, assuming *arguendo* that we were to view plaintiff's action using an ordinary negligence standard, we must find that plaintiff knowingly and voluntarily assumed the risks inherent in playing the game of hockey. Plaintiff's own testimony bears out this fact. Plaintiff was an experienced hockey player, playing from the time he was eight years old. He had played in organized adult leagues for approximately 10 years prior to his accident. Plaintiff testified that while it was "customary" for players to wait for a goalie to be present prior to taking practice shots, in his experience he had seen players take shots at open nets. There was no written rule against taking shots at open nets. Plaintiff was also aware, at the time he stepped onto the ice, that there was a risk of being hit with a puck during warm-ups. Indeed, according to plaintiff, that risk "always" existed. Nonetheless, plaintiff chose not to wear a protective face mask, since it was not required, even though in his estimation 65% to 70% of his teammates were wearing protective masks during warm-up and despite the inherent risk of being hit with a puck, irrespective of the goalie's presence at the net. Based on plaintiff's testimony, we believe that plaintiff voluntarily consented, understood and accepted the dangers inherent in the sport or due to a co-participant's negligence.

As we have stated, we believe that the distinction plaintiff raises, between the warm-up and the actual commencement of the game, to be illusory. Hockey is a contact sport. (*Keller*, 156 Ill. App. 3d at 237.) It is not made less so merely because the participants are warming up prior to the commencement of the game. Proof of ordinary negligence will not sustain an action against defendant in this case, merely because plaintiff alleges a violation of a rule. (*Oswald*, 84 Ill. App. 3d at 727.) Moreover, the evidence suggests that defendant here did not violate the customs and rules of the league. In addition to plaintiff's testimony, plaintiff's witness Czarnik and teammate Steve Marcordes testified that players may be hit by pucks during warm-up and during the game. Czarnik testified that he had often seen players hit and injured by pucks. Marcordes testified that he himself had been hit by hockey pucks during warm-up periods. Marcordes, unlike Czarnik, was familiar with the customs and usages of the Northbrook

league, so much so that plaintiff testified that he considered Marcordes a "player-coach." Marcordes also testified that it was common for players to take shots at an open net during warm-up.

■ We find no reason to abandon the well-established precedent of this court, and that of a majority of jurisdictions, that a participant in a contact sport may recover for injury only where the other's conduct is wilful or wanton or in reckless disregard to safety. There are a number of reasons justifying the application of this standard to sports-related injury cases. First, the risk of injury accompanies many informal contact sports. Thus, wilful and wanton or reckless conduct allows the court to gauge what is and is not permissible conduct under the circumstances. Second, as the court recognized in *Nabozny*, courts must strike a balance between "the free and vigorous participation in sports" and the protection of the individual from reckless or intentional conduct. (*Nabozny*, 31 Ill. App. 3d at 215.) Third, we believe that the practical effect of applying an ordinary negligence standard would be to open a legal Pandora's box, allowing virtually every participant in a contact sport, injured by another during a warm-up or practice, to bring an action based on the risks inherent in virtually every contact sport. This is exactly the type of result the courts have sought to avoid. See *Oswald*, 84 Ill. App. 3d at 727 ("[W]e find nothing in *** [*Stewart v. D.&R. Welding Supply Co.* (1977), 51 Ill. App. 3d 597, 366 Ill. App. 3d 1107,] supportive of plaintiff's contention that the proof of ordinary negligence will sustain an action for injury to a player where the violation of a safety rule is involved in the injury; rather, we see *Nabozny* as establishing the standard of conduct to be willfulness or a reckless disregard of safety where an injury to a player occurs in an athletic competition involving bodily contact").

Plaintiff further relies on *Pfister v. Shusta* (1994), 256 Ill. App. 3d 186, 627 Ill. App. 3d 1260, *appeal allowed* (1994), 156 Ill. 2d 566, 638 N.E.2d 1124, in support of his contention that the wilful and wanton standard is inapplicable to this case. In *Pfister*, the plaintiff and the defendant, college students at Illinois State University, were attending a party in a dormitory. While waiting in the dormitory lobby for friends, the plaintiff, the defendant and others began to kick around a crushed aluminum can. They established teams at opposite ends of the hallway, " 'kind of like hockey.' " (*Pfister*, 256 Ill. App. 3d at 187.) During the "game," the plaintiff pushed the defendant and the defendant then pushed the plaintiff, causing the plaintiff to fall backward against a wall on which there was a glass door encasing a fire hose. The plaintiff's hand went through the glass door, causing injury. (*Pfister*, 256 Ill. App. 3d at 187.) The trial court entered summary

judgment in favor of the defendant, finding that the can-kicking activity was a contact sport. The court held, therefore, that the plaintiff was required to plead and prove wilful or wanton conduct, not mere negligence, against the defendant. *Pfister*, 256 Ill. App. 3d at 186.

■ The appellate court reversed and remanded the action. In reversing, the court made the following observations:

> "The rule of the Restatement of Torts is that one who consents to conduct 'cannot recover in an action of tort for the conduct or for harm resulting from it.' [Citation.] A plaintiff who has entered voluntarily into some relation with defendant which he knows to involve a risk is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility. [Citation.] The Restatement makes it clear there cannot be recovery for either intentional or negligent conduct sanctioned by game rules. The key question under the Restatement is whether the contact is permitted by the rules or usages of the game.
>
> *** Under the Restatement, intentional conduct which is within the rules or usages of the game might not result in liability; on the other hand, negligent conduct not within the rules or usages of the game may result in liability. *** Injection of the wilful and wanton concept into these cases does not add clarity or aid analysis. The focus should be on whether the conduct was within the rules and usages of the game, not whether the conduct falls within the imprecise definition of wilful and wanton." (*Pfister*, 256 Ill. App. 3d at 188-89.)

The *Pfister* court also stated that the advantage of formality is that it is easier to determine whether the particular conduct was authorized by the rules and usages of the game. We note that in *Pfister*, it was precisely the lack of formality which led to the court's determination that the wilful and wanton standard was unhelpful. The factual issues of concern to the *Pfister* court were whether (1) the parties were engaged in a "game"; (2) the "game" was being played in an appropriate area; (3) the game had rules or customs; (4) the game permitted bodily contact; and (5) the plaintiff's injury was derived from bodily contact permitted by the rules of the game. The *Pfister* court further noted that the Restatement of Torts rule of effective consent (Restatement (Second) of Torts § 892(A)(1), at 364 (1979)) is not limited to formally organized sporting activities. For example, the court observed that whether children are playing "floor hockey" on a neighbor's patio (see *Keller*, 156 Ill. App. 3d at 237) or baseball in a backyard, there will be rules and usages as in professional or formalized leagues, but with differences. *Pfister*, 256 Ill. App. 3d at 190.

Here, plaintiff argues that what should guide this court's analysis, as he contends guided the court's analysis in *Pfister*, is whether defendant's conduct was within the rules and usages of the game. We need not engage in the queries troubling the *Pfister* court. It is undisputed that plaintiff and defendant were teammates in an organized hockey league. There were rules and usages. Reviewing the evidence in a light most favorable to plaintiff, there appears to be no genuine issue of material fact that practice shots were often taken at an open net and such was the custom of the team.

For the foregoing reasons, we affirm both orders of the circuit court granting summary judgment in defendant's favor.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.