(No. 76912.—

SEAN PFISTER, Appellee, v. TERRY SHUSTA, Appellant.

*Opinion filed October 26, 1995.*

418

MILLER and HARRISON, JJ., dissenting.

Dawn L. Wall and Robert W. Neirynck, of Costigan & Wollrab, P.C., of Bloomington, for appellant.

Mike McElvain, of Bloomington, for appellee.

James W. Fessler, Michael Resis and Glen E. Amundsen, of Querry & Harrow, Ltd., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE McMORROW delivered the opinion of the court:

This appeal presents the question of whether the contact sports exception to liability premised on negligence applies to injuries caused when two college students spontaneously began to kick a crushed soda

can in the lobby of a college dormitory. Under the contact sports exception, participants in contact sports may be held liable for injuries to co-participants caused by willful and wanton or intentional misconduct, but are not liable for injuries caused by ordinary negligence. *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723; *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212.

Sean Pfister (hereinafter plaintiff) and Terry Shusta (hereinafter defendant) were college students at Illinois State University. While waiting in a dormitory lobby for friends, plaintiff, defendant and two other students spontaneously began kicking a crushed aluminum soda can. The four students divided into two teams with two persons on each team, and set up informal goals against the walls of the dormitory lobby. Each team attempted to kick the crushed can into the opposing team's goal. Plaintiff allegedly pushed defendant toward a wall in an attempt to gain control of the can. Defendant responded by allegedly pushing plaintiff, causing plaintiff to fall. While attempting to break his fall, plaintiff put his left hand and forearm through the glass door of a fire extinguisher case on the wall of the dormitory. Plaintiff sustained injuries to his left hand and forearm. The entire episode took 5 to 10 minutes.

Plaintiff filed a complaint against defendant alleging that his injuries were caused by defendant's negligence. In response, defendant filed a motion for summary judgment contending that the activity at issue constituted a contact sport, and therefore he could not be held liable for injuries caused by simple negligent conduct. In support of his summary judgment motion, defendant attached excerpts from the parties' depositions. Plaintiff admitted to can kicking, a degree of team play, and the informal setting of goal areas. Defendant generally agreed with plaintiff's recounting of the activity but

likened the activity to hockey and soccer. Defendant based this analogy on his claim that the parties had divided themselves into teams, established goals and had no out-of-bounds area. Defendant also testified in his deposition that the group understood that physical "clubbing" or punching was not permitted.

Finding that the activity at issue fell within the contact sports exception to liability based on the standard of ordinary care applicable to negligence cases, the circuit court of McLean County granted defendant's motion for summary judgment. The circuit court held that the plaintiff failed to state a viable cause of action because he failed to allege willful and wanton misconduct by defendant. Plaintiff appealed the summary judgment order. The appellate court reversed the circuit court's order in favor of the defendant. (256 Ill. App. 3d 186.) We allowed the defendant's petition for leave to appeal. 145 Ill. 2d R. 315.

Generally, a person owes a duty of ordinary care to guard against injuries to others that may result as a reasonably probable and foreseeable consequence of negligent conduct. (*Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 373.) However, the Illinois appellate court has established an exception to the standard of ordinary care where injuries are sustained by participants engaging in contact sports. Under this judicially created exception to the standard of ordinary care, voluntary participants in contact sports are not liable for injuries caused by simple negligent conduct; however, they owe each other a duty to refrain from willful and wanton or intentional misconduct and are liable for injuries caused by willful and wanton misconduct. See, e.g., *Landrum v. Gonzalez* (1994), 257 Ill. App. 3d 942; *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212.

The appellate court created and adopted the willful and wanton liability requirement for voluntary partici-

pants in sports-related conduct in *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212. In *Nabozny*, a member of a high school soccer team kicked the opposing team's goalie in the head in violation of a soccer rule intended to protect participants of the game. The court created a narrow exception to the standard of ordinary care in order "to control a new field of personal injury litigation." (*Nabozny*, 31 Ill. App. 3d at 215.) In limiting liability for participants in contact sports, the court held that a participant would be liable for injuries caused during a sports game if the participant's conduct was "either deliberate, willful or with a reckless disregard for the safety of the other player." *Nabozny*, 31 Ill. App. 3d at 215.

Appellate court decisions have consistently interpreted the limited duty of care for contact sports participants under *Nabozny* as the duty to refrain from willful and wanton or intentional misconduct. Since *Nabozny*, the appellate court has applied the willful and wanton standard to cases in which participants in both formal and informal sporting activities were injured as a result of the conduct of their co-participants. See *Landrum v. Gonzalez* (1994), 257 Ill. App. 3d 942, 945 (recreational softball); *Keller v. Mols* (1987), 156 Ill. App. 3d 235 (unsupervised game of floor hockey on backyard patio among minors); *Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028 (summer recreation program game of "bombardment"); *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723 (high school physical education class basketball).

This court and the legislature have defined willful and wanton conduct as a course of action which shows actual or deliberate intent to harm or which, if the course of action is not intentional, shows an utter indifference to or conscious disregard for a person's own safety or the safety or property of others. (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 273; see, *e.g.*, 745

ILCS 10/1—210 (West 1992); see also Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1993).) Willful and wanton conduct is "a hybrid between acts considered negligent and behavior found to be intentionally tortious. *** Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko*, 161 Ill. 2d at 275-76.

Some jurisdictions have explicitly adopted the logic of *Nabozny* and its progeny and applied the "wilful and wanton" standard, or the comparable local standard, to injuries sustained by participants in a variety of formal and informal sports activities where physical contact among the participants is inherent. See *Crawn v. Campo* (1994), 136 N.J. 494, 504, 643 A.2d 600, 607 (softball); *Knight v. Jewett* (1992), 3 Cal. 4th 296, 336, 834 P.2d 696, 722, 11 Cal. Rptr. 2d 2, 28 (informal touch football); *Cornell v. Payne* (Tex. Ct. App. 1991), 814 S.W.2d 486, 488 (polo match); *Marchetti v. Kalish* (1990), 53 Ohio St. 3d 95, 97, 559 N.E.2d 699, 701 (child's game of kick the can); *Dotzler v. Tuttle* (1990), 234 Neb. 176, 180, 449 N.W.2d 774, 778 (pick-up game of basketball); *Gauvin v. Clark* (1989), 404 Mass. 450, 454, 537 N.E.2d 94, 96-97 (college hockey game); *Kabella v. Bouschelle* (1983), 100 N.M. 461, 463, 672 P.2d 290, 292 (informal tackle football game); *Ross v. Clouser* (Mo. 1982), 637 S.W.2d 11, 14 (softball); but see *Lestina v. West Bend Mutual Insurance Co.* (1993), 176 Wis. 2d 901, 501 N.W.2d 28 (negligence standard applied to adult recreational soccer).

The plaintiff asks this court to repudiate the contact sports exception in favor of the reasoning taken by the appellate court in this case. The appellate court abandoned the willful and wanton standard adopted in the line of cases following *Nabozny* (see, *e.g.*, *Landrum v.*

*Gonzales* (1994), 257 Ill. App. 3d 942), and instead applied the following five-part factual inquiry: (1) was the activity at issue a game; (2) was it played in an appropriate area; (3) did the game have rules or usages; (4) did the rules or usages permit the bodily contact which occurred; and (5) did the injury to the plaintiff arise from the contact which was permitted by the rules. (256 Ill. App. 3d at 190-91.) The appellate court based its decision on the Restatement (Second) of Torts as well as upon *dicta* in this court's decision in *Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 399 ("Clearly, it may be negligent to play in areas inappropriate for such activity"). (See Restatement (Second) of Torts § 50, Comment *b* (Apparent Consent), at 86; § 496A, Comment *c* (2) (Assumption of the Risk), at 561; § 892A(1) (Effect of Consent), at 364.) Under the rationale of the appellate court, both intentional and negligent misconduct during participation in a game are immunized from liability if the conduct at issue is permitted by the rules or usages of the game. The appellate court reasoned that such misconduct is immunized because the participants have consented to the physical contact by virtue of their participation in the game. (256 Ill. App. 3d at 188-89.) Under this analysis, the characterization of the activity in question as a contact sport and the concurrent determination of whether the conduct that caused injury was willful and wanton are irrelevant. The appellate court claimed that the "[i]njection of the wilful and wanton concept into these cases does not add clarity or aid analysis." 256 Ill. App. 3d at 189.

We decline to adopt the approach suggested by the appellate court. It is difficult to understand how the appellate court's five-part inquiry into the rules of can kicking would clarify the determination of liability in this case. The physical contact at issue was the defendant's alleged pushing of the plaintiff which resulted in

the plaintiff's fall and the plaintiff's subsequent attempt to break his fall by thrusting his arm through the glass door of a wall-mounted fire extinguisher cabinet. Under the appellate court's approach, if the alleged push was permitted by the rules and usages of can kicking as played by the parties, then there is no liability for the injurious consequences of the defendant's conduct. By participating in the game, the plaintiff would have given his consent to the physical contact permitted by the rules and usages of the game, and thus cannot recover under either the theories of negligence or intentional tort. (See Restatement (Second) of Torts § 892A(1), at 364; § 50, Comment *b*, at 86 (1965).) However, if the rules of the can kicking game did not permit the alleged push, then the plaintiff may recover under either theory of negligence or intentional tort. There is no need to determine whether the conduct was willful and wanton in such an analysis.

Due to the spontaneous and disorganized nature of the can kicking game, it does not appear that rules were formulated governing the permissible physical contact among participants in this case. Even in those cases where rules govern the permissible degree of physical contact among the participants of a game, it is difficult to determine what may be an acceptable amount of physical contact allowed by the rules. In games where physical contact is inherent, "rule infractions, deliberate or unintentional, are virtually inevitable" and justify a different standard of care. (*Oswald*, 84 Ill. App. 3d at 727.) In applying the *Nabozny* rationale to the question of liability for an injury resulting from physical contact during an informal tackle football game, the New Mexico Supreme Court correctly noted the practical reason for applying the willful and wanton standard to organized and informal contact sports: "The players in informal sandlot or neighborhood games do not, in most

instances, have the benefit of written rules, coaches, referees or instant replay to supervise or re-evaluate a player's actions." *Kabella*, 100 N.M. at 465, 672 P.2d at 294.

In contrast to the factual analysis of a game's rules and usages required in the approach adopted by the appellate court in the case at bar, the contact sports exception to liability based on failure to exercise ordinary care offers a practical approach that is also supported by common sense. Under the contact sports exception, the relevant inquiry is whether the participants were involved in a contact sport, not whether the sport was formally organized or coached. (*Keller v. Mols* (1987), 156 Ill. App. 3d 235, 237.) In the instant case, the circuit court examined the depositions of the parties and concluded that there was no genuine issue of material fact. The can kicking game was a spontaneous, informal equivalent to soccer or floor hockey. The parties divided themselves into teams, set goals and engaged in the physical contact typically found in soccer or floor hockey. Both soccer and floor hockey are team sports where physical contact among participants is inherent in the game. *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212; *Keller v. Mols* (1987), 156 Ill. App. 3d 235.

Participants in team sports, where physical contact among participants is inherent and virtually inevitable, assume greater risks of injury than nonparticipants or participants in noncontact sports. (*Oswald*, 84 Ill. App. 3d at 727.) Recovery will be granted for injuries sustained by participants in contact sports only if the injuries are caused by willful and wanton or intentional misconduct of co-participants. (*Nabozny*, 31 Ill. App. 3d at 215.) In this case, the plaintiff did not allege, and the facts do not establish, either willful and wanton or intentional misconduct by the defendant. The circuit court properly applied the contact sports exception bar

to liability for injuries caused by the mere simple negligence alleged in the plaintiff's complaint.

In the alternative, the plaintiff argues for the adoption of the duty of ordinary care for participants in contact sports. (See *Lestina v. West Bend Mutual Insurance Co.* (1993), 176 Wis. 2d 901, 501 N.W.2d 28.) Plaintiff contends that his argument is supported by Illinois public policy because this court has repeatedly refused to immunize negligent conduct in order to promote socially beneficial policies such as the promotion of participation in athletic events. See *Cates v. Cates* (1993), 156 Ill. 2d 76 (partial abrogation of parent/child tort immunity in cases of automobile negligence); *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326 (abrogation of tort immunity of charitable organizations); *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69 (abrogation of tort immunity for an insurance company's voluntary conduct which was arguably beneficial to a company's employees); *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11 (abrogation of governmental tort immunity).

We find the references to *Cates, Darling, Nelson* and *Molitor* unpersuasive. The contact sports exception strikes the appropriate balance between society's interest in limiting liability for injuries resulting from physical contact inherent in a contact sport and society's interest in allowing recovery for injuries resulting from willful and wanton or intentional misconduct by participants. Those who participate in soccer, football, softball, basketball, or even a spontaneous game of can kicking, choose to play games in which physical contact among participants is inherent in the conduct of the game. Participants in such games assume a greater risk of injury resulting from the negligent conduct of coparticipants. Justice Green accurately reviewed the policy reasons supporting the contact sports exception in his dissent in the case at bar:

"The exposure of one participant to liability to another participant for merely negligent bodily contact, even under the disorganized situation here, will cause more harm than good.

\*\*\*

\*\*\* [I]n common understanding, football, wrestling, and boxing, among others, are clearly recognized as contact sports. Basketball, hockey, and soccer all permit some bodily contact and, in actual practice, more contact is permitted than a reading of the rules would indicate. In all of the above sports, players regularly commit contact beyond that which is permitted by the rules even as applied. In basketball, such an illegal contact is described as a foul for which a sanction is imposed. Sometimes the player fouled is injured. This is to be expected. If every time a negligent foul resulted in injury, and liability was imposed, the game of basketball as we know it would not be played." 256 Ill. App. 3d at 191-92 (Green, J., dissenting).

In this case, the plaintiff agreed to participate in a can kicking game similar to soccer and floor hockey. A degree of physical contact among the participants in this game was inherent in the conduct of the game. In fact, plaintiff allegedly pushed defendant immediately before plaintiff was allegedly pushed. The contact sports exception allows recovery for injuries resulting from willful and wanton and intentional misconduct while taking into account the voluntary nature of participation in games where physical contact is anticipated and where the risk of injury caused by this contact is inherent. The circuit court properly applied the contact sports exception to the standard of ordinary care, and did not err in granting the defendant's motion for summary judgment.

For the reasons stated above, the judgment of the appellate court is reversed and the summary judgment order of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE MILLER, dissenting:

I would affirm the judgment of the appellate court. The decision below strikes an appropriate balance between the goal of encouraging participation in sports and games and the need to protect participants from unreasonable risks of harm. As the appellate court discerned, the key inquiry here is whether the conduct in question is sanctioned by the rules, if any, of the pastime being pursued. This approach corresponds to the parties' expectations, and to their justified reliance on the rules of the game as a means of establishing and regulating the obligations owed by one participant to another.

Perhaps the signal feature of this area of law is that it can involve activities in which some measure of physical contact is expected in the normal course of competition. The participants' consent to these intrusions on their personal autonomy must play a central role in any analysis of the circumstances under which a participant should be permitted to recover for injuries incurred during a game. It cannot be denied that participation in sports necessarily implies the player's consent to conduct that in different circumstances would be considered negligence, or even a battery.

Section 50 of the Restatement (Second) of Torts, regarding consent to intentional conduct, is instructive. Comment *b* to section 50 states:

"Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages. Participating in such a game does not manifest consent to contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill. This is true although the player knows that those with or against whom he is playing are habitual violators of such rules." (Restatement (Second) of Torts § 50, Comment *b*, at 86 (1965).)

As the appellate court concluded, similar principles can be applied to actions pursued under a negligence theory.

Unlike the majority, I do not believe that persons who are struck by oversized bat rings that have been improperly placed on baseball bats, to cite one example (see *Stewart v. D&R Welding Supply Co.* (1977), 51 Ill. App. 3d 597), should be required to plead and prove willful and wanton misconduct if they are to recover for their injuries. I agree with the court below, and with Justice Harrison, that negligence should be available as a basis for recovery. The negligence standard is flexible and can be adapted to a variety of circumstances; conduct that is actionable in one setting will not be so in another. In allowing actions for sports-related injuries to proceed on a negligence theory, the Supreme Court of Wisconsin noted:

> "The very fact that an injury is sustained during the course of a game in which the participants voluntarily engaged and in which the likelihood of bodily contact and injury could reasonably be foreseen materially affects the manner in which each player's conduct is to be evaluated under the negligence standard." *Lestina v. West Bend Mutual Insurance Co.* (1993), 176 Wis. 2d 901, 913, 501 N.W.2d 28, 33.

The appellate court suggested an inquiry that could readily frame the issues presented here. (256 Ill. App. 3d 186, 190-91.) The trier of fact could consider, among other things, whether the conduct at issue was a game and whether the rules, if there were any, permitted the type of contact complained of by the plaintiff. Rather than being irrelevant, as the majority asserts, the appellate court's analysis correctly focuses on the circumstances in which the present injury was incurred.

JUSTICE HARRISON, also dissenting:

It is unnecessary to license negligence in order to foster vigorous and enthusiastic participation in contact

sports. Like the Supreme Court of Wisconsin in *Lestina v. West Bend Mutual Insurance Co.* (1993), 176 Wis. 2d 901, 910-11, 501 N.W.2d 28, 32, I am unpersuaded that adopting the standard of ordinary negligence, as opposed to willful and wanton misconduct, will have a chilling effect upon participation in such sports. Negligence is no more a necessary part of vigorous play than is intentional misconduct, and injuries that occur as a result of ordinary negligence are no more to be countenanced than are injuries that occur as a result of either intentional or willful and wanton misconduct. If negligence were discountenanced rather than sanctioned in contact sports, one might reasonably expect a decline in not only the number but also the severity of injuries that happen during their play.

In adopting ordinary negligence as the standard of care for participants competing in team contact sports for recreation, the Supreme Court of Wisconsin reiterated the axiom that this standard is readily adaptable to a wide range of situations because it requires merely that a person exercise ordinary care under the circumstances. (*Lestina*, 176 Wis. 2d at 913, 501 N.W.2d at 33.) To state the obvious, an act that is negligent under some circumstances might well not be so when it occurs during play of a contact sport. The remarkable flexibility of the standard of care of ordinary negligence enables the trier of fact to determine whether the defendant acted as a reasonably careful person would have done under the circumstances of participation in a contact sport in the same way that it permits triers of fact to make the same assessment concerning the myriad other circumstances with which they are confronted daily. Juries are quite as capable of identifying ordinary care on a playing field as they are of perceiving it everywhere else. On that playing field ordinary care is not too much to expect.

Because I would hold that the standard of care for participants in contact sports is that of ordinary negligence, I would affirm the judgment of the appellate court.