# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Gvillo v. DeCamp Junction, Inc.*, 2011 IL App (5th) 100262

---

| | |
|---|---|
| Appellate Court Caption | GREGORY GVILLO, Plaintiff-Appellant, v. DeCAMP JUNCTION, INC., JIM MOULTRIE, and ARON KLENKE, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-10-0262 |
| Filed | October 31, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action against the organizer of an amateur softball league, one of the organizer's employees and a player for the injuries plaintiff suffered when defendant player collided with plaintiff, a first baseman, while running to first base, the appellate court concluded that the sports exception did not apply to the organizer and its employee under the circumstances and the entry of summary judgment for the organization and its employee was reversed where a genuine issue of material fact existed as to whether the setup of the field proximately caused plaintiff's injuries. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 08-L-871; the Hon. Ann Callis, Judge, presiding. |
| Judgment | Reversed; cause remanded. |

| Counsel on Appeal | Rick Schoenfield, of DiVincenzo, Schoenfield, Swartzman, Michael R. Lang, of Michael R. Lang & Associates, both of Chicago, and Christopher M. Donohoo, of Donohoo Law Firm, P.C., of Wood River, for appellant. |
|---|---|
| | Robert H. Gregory, of Law Office of Robert H. Gregory, P.C., of East Alton, for appellees. |
| Panel | PRESIDING JUSTICE CHAPMAN delivered the judgment of the court, with opinion. |
| | Justices Spomer and Stewart concurred in the judgment and opinion. |

## OPINION

¶ 1      The plaintiff, Gregory Gvillo, was injured during a softball game when defendant Aron Klenke collided with him. The plaintiff alleged, in relevant part, that defendants DeCamp Junction, Inc., and Jim Moultrie set up the softball field in an unreasonably dangerous manner, thereby causing the collision. He appeals an order of the trial court granting summary judgment in favor of DeCamp Junction and Moultrie. The plaintiff argues that (1) the court erred in finding that the contact sports exception applies and (2) even assuming the contact sports exception applies, genuine issues of material fact remain as to whether the defendants acted willfully and wantonly. We reverse.

¶ 2      At issue in this appeal is the contact sports exception to ordinary negligence as a basis for liability. Under that exception, a participant in a contact sport is only liable for injuries caused to another participant if the injuries are caused by intentional or willful and wanton misconduct. Participants are not liable for injuries that result from ordinary negligence. *Pfister v. Shusta*, 167 Ill. 2d 417, 419, 657 N.E.2d 1013, 1014 (1995). The question before this court is whether this exception applies to the organizational defendants, DeCamp Junction and Moultrie, under the circumstances presented.

¶ 3      DeCamp Junction and its employee, Moultrie, set up an informal amateur softball league each summer. The plaintiff was the coach and first baseman for a team that played in the league. Klenke was a coach and player on another team. During a playoff game, Klenke hit a ground ball toward the third baseman, who fielded the ball and threw it to the plaintiff. In order to make the play, the plaintiff had to stretch out to reach the ball while keeping his foot on first base. Just after the plaintiff caught the ball, Klenke collided with him while attempting to reach first base. As a result of this collision, the plaintiff suffered a fracture and nerve damage.

¶ 4      In his complaint, the plaintiff alleged that the organizational defendants provided a

-2-

playing field that was unreasonably dangerous. He alleged that the defendants were responsible for setting up the softball field. He further alleged that they did not follow two safety rules of the Amateur Softball Association (ASA) that are designed to prevent collisions like the one that occurred between the plaintiff and Klenke. Specifically, rule 2, section 3H, of the ASA Rules of Softball provides that first base must be a double base measuring 30 inches by 15 inches. Half of the base should be white and located in fair territory, while the other half should be green or orange and located in foul territory. The plaintiff explained in his discovery deposition that this system allows the first baseman to use the white half of the base in fair territory to make the play and leaves the green or orange half of the base in foul territory for the base runner.

¶ 5        In addition, section 3 of rule 2 requires a running lane between home plate and first base. This is to be accomplished by painting a line parallel to the base line three feet away from the base line in foul territory. The rule provides for this line to run from the outer edge of first base to a point halfway between home plate and first base. According to the plaintiff's complaint, both of these rules are safety rules designed to prevent collisions between batters and first basemen. He alleged that the defendants provided only a single 15-inch-by-15-inch white base in fair territory and did not provide a running lane. He further alleged that the organizational defendants acted "willfully, wantonly, and/or recklessly" in setting up the field in this "highly dangerous manner."

¶ 6        In a discovery deposition, the plaintiff testified that the league set up by the defendants followed the ASA's softball rules "with a few minor exceptions." He stated that they used different types of bats and balls than were called for under ASA rules. The plaintiff also testified that first base had been set up as a single 15-by-15 base all season. He testified that he played weekly games at DeCamp Junction from May, when the season began, until September, when the accident occurred. He testified that there was a "close call" at first base earlier in the season and that he mentioned this to Moultrie, but he admitted that he never refused to play because of the way first base was set up.

¶ 7        The plaintiff also testified regarding his perception of Klenke's intent. He stated that prior to the start of the game, the two teams argued over player eligibility. According to the plaintiff, a player on Klenke's team had not played regularly during the weekly "regular season" games and was therefore not eligible to play in the playoff rounds. The plaintiff called this to the attention of the umpires, and the player was disqualified. He testified that he did not know whether Klenke was upset about this. He later testified that he believed that Klenke ran into him intentionally, but he admitted that he did not actually know what Klenke was thinking.

¶ 8        The organizational defendants filed a motion for summary judgment. In it, the defendants argued that they were entitled to a judgment as a matter of law because (1) the contact sports exception was applicable and the factual record did not demonstrate that the defendants engaged in willful and wanton misconduct and (2) the ASA rules regarding the setup of first base and the first base line were not applicable to an "informal summer 'beer league.'" The court denied the motion for summary judgment. The defendants then filed a motion to reconsider, raising essentially the same three arguments. This time, they specifically argued that the contact sports exception was applicable to organizational defendants just as it was

applicable to participants. They also argued that they did not have a duty to use the ASA's double-base system because the game was not sponsored by the ASA. The court granted the motion to reconsider and the motion for summary judgment. The plaintiff then filed the instant appeal.

¶ 9 Summary judgment is appropriate only if the pleadings, depositions, and affidavits show that there are no genuine issues of material fact to be resolved and the moving party is entitled to a judgment as a matter of law. *Thompson v. Gordon*, 241 Ill. 2d 428, 438, 948 N.E.2d 39, 45 (2011). Summary judgment is a drastic measure. Thus, when determining whether genuine issues of material fact remain that would preclude summary judgment, we view the factual record in the light most favorable to the nonmoving party. *United National Insurance Co. v. Faure Brothers Corp.*, 409 Ill. App. 3d 711, 716, 949 N.E.2d 1185, 1190 (2011). In addition, summary judgment is not appropriate unless the moving party's right to judgment is " 'clear and free from doubt.' " *United National Insurance Co.*, 409 Ill. App. 3d at 716, 949 N.E.2d at 1190 (quoting *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008)). Our review is *de novo*. *United National Insurance Co.*, 409 Ill. App. 3d at 716, 949 N.E.2d at 1190.

¶ 10 The plaintiff argues that the contact sports exception does not apply under the facts and circumstances of this case. As previously mentioned, that exception provides that a participant in a contact sport is not liable for injuries to another participant based on principles of ordinary negligence, but a participant is liable for injuries caused by willful and wanton or intentional misconduct. *Pfister*, 167 Ill. 2d at 419, 657 N.E.2d at 1014. Put differently, participants in contact sports owe other participants a "duty to refrain from willful and wanton or intentional misconduct." *Pfister*, 167 Ill. 2d at 420, 657 N.E.2d at 1015. One reason for this rule is that physical contact between players is an inherent part of contact sports, and injuries from such contact are to be anticipated as an inherent risk associated with playing a contact sport. *Karas v. Strevell*, 227 Ill. 2d 440, 452, 884 N.E.2d 122, 130 (2008).

¶ 11 Another equally important reason is the need to avoid a "chilling effect" on the way contact sports are played. *Karas*, 227 Ill. 2d at 452, 884 N.E.2d at 130. Numerous courts have voiced concern that applying a standard of ordinary negligence in cases involving contact sports injuries might discourage " 'vigorous participation' " in a sport or fundamentally alter the way it is played. *Karas*, 227 Ill. 2d at 453, 884 N.E.2d at 130; see *Karas*, 227 Ill. 2d at 452-53, 884 N.E.2d at 130 (and cases cited therein). This concern is "a primary justification" for the contact sports exception. *Karas*, 227 Ill. 2d at 452-53, 884 N.E.2d at 130.

¶ 12 Courts of this state have determined that softball is a contact sport. Thus, the contact sports exception is applicable to claims involving plaintiffs and defendants who are both participants in the sport of softball. *Landrum v. Gonzalez*, 257 Ill. App. 3d 942, 948, 629 N.E.2d 710, 715 (1994). However, it is less clear whether the exception applies to nonparticipant organizational defendants. See *Karas*, 227 Ill. 2d at 461, 884 N.E.2d at 135 (noting that the question of "[w]hether the contact sports exception may be applied to a nonparticipant in a sporting event" was an issue of first impression).

¶ 13    In *Karas*, our supreme court considered the applicability of the exception to nonparticipant defendants where a plaintiff was injured during an amateur hockey game. The plaintiff was injured when two players on an opposing team bodychecked him from behind, in contravention of league rules. *Karas*, 227 Ill. 2d at 443-44, 884 N.E.2d at 125. The plaintiff alleged willful and wanton misconduct on the part of the two players. *Karas*, 227 Ill. 2d at 444, 884 N.E.2d at 125. He also alleged negligence on the part of the opposing team, the amateur hockey league, and the referees' association. *Karas*, 227 Ill. 2d at 445, 884 N.E.2d at 126. He alleged that these organizational defendants failed to take adequate steps to enforce or instruct players and coaches on the rule against bodychecking from behind. *Karas*, 227 Ill. 2d at 445, 884 N.E.2d at 126.

¶ 14    The *Karas* court found that, under the facts before it, the contact sports exception applied to the nonparticipant defendants there (the league, the opposing team, and the referees' association). *Karas*, 227 Ill. 2d at 464, 884 N.E.2d at 137. It is important to note, however, that the court did not hold that claims against a nonparticipant organization will always be subject to the contact sports exception. Rather, the court held as follows:

> "[W]hether the contact sports exception applies to a nonparticipant defendant is a policy determination that rests on the circumstances of the sport and its inherent risks, the relationship of the parties to the sport and to each other, and whether imposing broader liability on the defendant 'would harm the sport or cause it to be changed or abandoned.' " *Karas*, 227 Ill. 2d at 465, 884 N.E.2d at 137 (quoting *Kahn v. East Side Union High School District*, 75 P.3d 30, 39 (Cal. 2003)).

¶ 15    In applying this holding to the facts before it, the *Karas* court focused on the nature of the allegations against the organizational defendants there. The court explained that coaching and officiating a sport involve "subjective decisionmaking that often occurs in the middle of a fast[-]moving game" and that "it is difficult to imagine activities more prone to second-guessing than coaching and officiating." *Karas*, 227 Ill. 2d at 464, 884 N.E.2d at 137. The court also considered the fact that the way coaches and referees enforce rules "directly affects the way in which the sport is played." *Karas*, 227 Ill. 2d at 464, 884 N.E.2d at 137. As such, the court was concerned that "[i]mposing too strict a standard of liability on the enforcement of those rules would have a chilling effect on vigorous participation in the sport." *Karas*, 227 Ill. 2d at 464, 884 N.E.2d at 137.

¶ 16    The plaintiff argues that the instant case is distinguishable from *Karas* on both of these points, and we agree. Here, the defendants' decisions in setting up the softball field are at issue, not coaching or officiating decisions made in the middle of a fast-moving game. These decisions are not as inherently subjective as the coaching and refereeing decisions at issue in *Karas*, and the defendants were not required to make split-second decisions in the middle of a fast-moving game.

¶ 17    Moreover, the record before us does not support the notion that imposing liability for ordinary negligence under these circumstances would alter the sport of softball or discourage vigorous participation. As previously discussed, the Amateur Softball Association requires that softball fields be set up using the double-base system and a running lane between home plate and first base. In addition, the depositions and pleadings on file indicate that the double-

base system minimizes the potential for collisions like the one that occurred between the plaintiff and Klenke while allowing base runners to run as fast as they can to reach base and allowing first basemen to make an effort to make the plays necessary to get runners out. In other words, the system does nothing to interfere with vigorous participation in the sport. For these reasons, we conclude that the contact sports exception is not applicable to the organizational defendants under the circumstances of the instant case.

¶ 18    We note that the trial court did not expressly state the rationale for its ruling. Thus, we will briefly consider two alternative arguments raised by the defendants in support of their position. First, the defendants argue that the ASA's safety rule was not applicable to the game because it was not an ASA-sponsored game. We do not believe the defendants are entitled to summary judgment on this basis for two reasons. Although it is undisputed that the game was not an ASA-sponsored game, a question of fact remains as to whether the informal league adopted this particular rule. The plaintiff stated in his deposition that the ASA rules were followed with certain exceptions related to the types of bats and balls that were used. However, he also stated that the defendants had used a single-base system and no running lane all summer long. A portion of Moultrie's discovery deposition also appears in the record. Moultrie did not contradict the plaintiff's testimony, and he did not address whether any rules related to the setup of the field applied. He stated that at the beginning of each summer, the league set the rules. He explained that he held a meeting with the team captains to let them decide if they wanted to change any rules. Moultrie also stated that teams could agree to change certain rules at games. As an example, he said that if one team did not have enough players, the teams could agree to allow players from a different team to join in. Although the defendants point to this testimony in support of their claim that the rules relating to the setup of the field were not applicable, we believe there is a genuine issue of fact as to whether this is the case. Moreover, the ultimate question is whether the setup of the field was negligent. The ASA rule may be relevant to this question even if the rule is not binding on the defendants.

¶ 19    The defendants also argue that they were entitled to summary judgment as a matter of law because of two points they contend the plaintiff admitted in his discovery deposition. Specifically, the plaintiff testified that he did not believe the organizational defendants intended to injure him. He also testified that he believed Aron Klenke ran into him intentionally, and he acknowledged that if this was the case, a different setup of the field would not have prevented the collision. We may dispose of the first of these two claims easily. As the plaintiff correctly notes, he does not need to prove that the defendants acted intentionally even under the contact sports exception. See *Karas*, 227 Ill. 2d at 459, 884 N.E.2d at 134 (holding that participant liability for injuries in full-contact sports such as ice hockey or tackle football may be premised either on intentional injury or on conduct outside the ordinary activities associated with the sport); *Pickel v. Springfield Stallions, Inc.*, 398 Ill. App. 3d 1063, 1067-68, 926 N.E.2d 877, 882-83 (2010) (explaining that in other contact sports, participant liability may be premised on intentional misconduct or "conscious disregard" for another participant's safety). Here, we have already concluded that the contact sports exception does not apply; thus, the plaintiff only needs to prove that the defendants' actions in setting up the field were negligent and that their negligence caused his injuries.

¶ 20     We are also not persuaded that the plaintiff's deposition testimony regarding Klenke's intent is sufficient to remove genuine questions of fact as to whether the setup of the softball field proximately caused the plaintiff's injuries. The plaintiff testified that he discussed the incident with Jessica Ketchum. Ketchum was the scorekeeper for the plaintiff's team during the game in question, and she saw the collision between the plaintiff and Klenke. According to the plaintiff, he and Ketchum discussed their belief that Klenke collided with the plaintiff intentionally. This belief was based on the positioning of Klenke's shoulder as he ran into the plaintiff. The plaintiff further testified that, if Klenke collided with him deliberately, neither the double-base system nor a running lane would have prevented the collision. However, the plaintiff also admitted that he did not see Klenke because his attention was focused on the ball, and he also admitted that he did not actually know what Klenke's intent was. This deposition testimony is not sufficiently "deliberate, clear, and unequivocal" to qualify as a judicial admission. See *In re Estate of Rennick*, 181 Ill. 2d 395, 406, 692 N.E.2d 1150, 1155 (1998). In addition, we note that Klenke denied intentionally colliding with the plaintiff. Thus, there is a genuine question remaining as to whether Klenke intentionally caused the collision. This question precludes summary judgment.

¶ 21     We conclude that the contact sports exception does not apply to the facts before us. We further conclude that the court erred in granting the defendants' motion for summary judgment. We therefore reverse the court's judgment and remand for further proceedings.

¶ 22     Reversed; cause remanded.