ALFONSO RAMOS, JR., a Minor, by Maria Ramos, his Mother and Next Friend, Plaintiff-Appellant, v. THE CITY OF COUNTRYSIDE *et al.*, Defendants-Appellees.

First District (1st Division)  Nos. 83—1592, 84—1116 cons.

Opinion filed October 28, 1985.

Edward L. Osowski, of Chicago (Isadore M. Bernstein, Ltd., of counsel), for appellant.

Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (Stewart H. Diamond and Cary Schwimmer, of counsel), for appellee City of Countryside.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Nunzio C. Radogno and C. Barry Montgomery, of counsel), for appellee Steven Best.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Alfonso Ramos, Jr., through his mother and next friend, Maria Ramos, filed a four-count amended complaint against defend-

ants, Steven Best and the city of Countryside, seeking $15,000 in damages. Plaintiff alleges that he was injured in a game of "bombardment" when a "softball" thrown by Steven Best struck plaintiff in the eye. The trial court dismissed count II directed against Steven Best sounding in negligence, and counts I and IV directed at the city of Countryside sounding in negligence and wilful and wanton misconduct respectively. Plaintiff appeals contending the stricken counts properly allege causes of action against the respective defendants.

We affirm.

In adjudicating the propriety of the instant dismissals, we must accept all properly pleaded facts in plaintiff's complaint. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d 976.) However, we do not defer to unsupported conclusions of law found in the complaint. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d 976.

According to plaintiff's complaint, in 1981 the city of Countryside sponsored and organized a summer recreation program for elementary aged children which was held on public property. The participants were charged a registration fee. Plaintiff and Steven Best, who were eight and 14 years old respectively, were participants in the program. The game of "bombardment" in which plaintiff was injured was an activity in the program.

Counts II and III directed at Steven Best alleged that he:

"a. Threw said ball so that it struck plaintiff in his left eye;

b. Failed to warn plaintiff before throwing said ball;

c. Threw said ball with excessive force."

Count II alleged negligence and was dismissed by the trial court. Count III alleged wilful and wanton misconduct and is still pending in the trial court.

Counts I and IV were directed at the city of Countryside and alleged that the municipality:

"a. Allowed and permitted children, regardless of the disparity of their age, strength and size, to participate together in said game;

b. That by the very nature of said game, considering the aforesaid disparities, created a condition which was inherently dangerous and hazardous to a child of plaintiff's tender years;

c. Failed to supervise said event so as to afford protection to younger participants therein."

Count I alleged negligence and count IV alleged wilful and wanton misconduct on the part of the municipality. The trial court dismissed both counts I and IV directed at the city of Countryside.

■ Initially, plaintiff argues count II properly pleads a cause of action for negligence against Steven Best. We disagree.

The appellate court has repeatedly held that a participant in a sporting event is not liable for injuries to other participants if the gravamen of the action is simple negligence. (See *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723, 406 N.E.2d 157; *Stewart v. D & R Welding Supply Co.* (1977), 51 Ill. App. 3d 597, 366 N.E.2d 1107; *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212, 334 N.E.2d 258.) We have noted that the law " 'should not place unreasonable burdens on the free and vigorous participation in sports by our youth ***.' " *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723, 725, 406 N.E.2d 157, quoting *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212, 215, 334 N.E.2d 258.

We are not persuaded by plaintiff's contention that the game of "bombardment" is not a sporting event and that therefore the line of cases cited above are not applicable. In the case at bar, the game of "bombardment" was organized and according to plaintiff counsel's argument included specific rules. Under these circumstances, we do not believe there is a legal distinction between "bombardment" and basketball or soccer. We are also unpersuaded by plaintiff's argument that *Oswald, Stewart*, and *Nabozny* are based on the theory that the plaintiffs assumed the risk of their sports related injury in those cases; that the instant plaintiff was too young to have adequately appreciated the inherent dangers of "bombardment"; and, that therefore he did not assume the risk of the injury here.

■ In *Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 419 N.E.2d 913, the defendant was found liable for negligence for running into the plaintiff while the defendant was trying to catch a football. The defendant, citing the appellate court cases above, argued he should have been held liable only under a wilful and wanton misconduct standard. The supreme court agreed with the defendant there that the "appellate court has held that participants in organized sporting events can only be held liable under that [wilful and wanton misconduct] standard." (84 Ill. 2d 390, 395-96.) The court in *Osborne* determined the line of appellate cases did not apply because the evidence did not indicate that the plaintiff was injured while participating in the game but that he was injured as a bystander. The court did, however, interpret the appellate cases as limiting defendants' liability based on his conduct and not the plaintiffs' assuming the risk of injury. We hold, therefore, based on the standards previously pronounced by these appellate court decisions, that the trial court properly dismissed count II of plaintiff's complaint sounding in negligence

against Steven Best.

Next, plaintiff argues counts I and IV properly allege causes of action against the city of Countryside sounding in negligence and wilful and wanton misconduct respectively.

The Local Governmental and Governmental Employees Tort Immunity Act provides in pertinent part (Ill. Rev. Stat. 1981, ch. 85, par. 3—108(a)):

> "Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property."

Nevertheless, plaintiff argues that the above-quoted statute does not shield the city of Countryside from liability in the case at the bar because: (1) the Immunity Act does not shield municipalities from wilful and wanton misconduct; (2) the complaint adequately alleged a "special relationship" between plaintiff and the municipality to establish potential liability; and (3) the municipality waived its immunity through its participation in the Intergovernmental Risk Management Agency (IRMA).

The statute quoted above has been applied to hold school boards and employees immune from liability for injuries suffered by plaintiff-students inflicted by fellow students because of alleged failure to supervise the students' activities in a classroom (*Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153), in a school lunchroom (*Edmonson v. Chicago Board of Education* (1978), 62 Ill. App. 3d 211, 379 N.E.2d 27), as well as an intramural high school basketball game (*Fustin v. Board of Education* (1968), 101 Ill. App. 2d 113, 242 N.E.2d 308). We believe the statute is applicable, as well, to shield the city of Countryside from liability for an asserted failure to adequately supervise a summer recreation program held on public property.

Plaintiff argues the statute should not apply because plaintiff alleged wilful and wanton misconduct on the part of the city of Countryside and the statute should not immunize the municipality from such conduct. Plaintiff relies on *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705.

As the city of Countryside contends, in *Kobylanski* the court held only that a school board, which is normally immune from liability through the doctrine of *in loco parentis*, can be liable for wilful and wanton misconduct. The immunity granted the board of education in *Kobylanski* was not based on the Tort Immunity Act and thus the issue presented here was not addressed. However, even if the Tort Im-

munity Act does not immunize municipalities from wilful and wanton misconduct, we conclude that in the case at bar the plaintiff has failed to allege any conduct on the part of the municipality which can properly be characterized as wilful and wanton misconduct.

■ As we held in *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 385, 394 N.E.2d 452, and *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153, the "mere conclusory allegation of wilful and wanton conduct is not sufficient" to establish a cause of action. In both *Booker* and *Clay* plaintiffs were injured by fellow students. The appellate court held that although plaintiffs contended that the board of education was guilty of wilful and wanton misconduct, the facts alleged in the complaints merely sustained allegation of negligent failure to supervise the students' activities. Similarly, in the case at bar, although plaintiff's complaint contains the bald assertion of wilful and wanton misconduct on the part of the city of Countryside, the facts alleged can only sustain a possible failure to adequately supervise activities on public property, for which the municipality is not liable. Ill. Rev. Stat. 1981, ch. 85, par. 3—108(a).

Next, plaintiff argues his payment of a registration fee to the city of Countryside created a "special relationship" between himself and the municipality upon which liability may be based. Plaintiff relies on *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, 461 N.E.2d 616.

In *Comastro* the plaintiff attended a rock concert at the Rosemont Horizon, a large multipurpose arena owned and operated by the village of Rosemont. Plaintiff was attacked and injured in the parking lot of the Horizon. In its motion for summary judgment, the village of Rosemont conceded that it had a special relationship with plaintiff as that of business-inviter to a business-invitee. The sole issue on appeal was whether as a matter of law the village of Rosemont had insufficient knowledge of possible violence to have had a duty to protect the plaintiff. (122 Ill. App. 3d 405, 409.) We held that because the village of Rosemont was engaged in a proprietary function in the operation of the Horizon, and because the village had afforded the patrons of the Horizon greater police protection than it had to the public at large, it was not shielded by the general rule of nonliability of municipalities for failure to exercise its general police powers. (122 Ill. App. 3d 405, 410-11.) We remanded the case for trial on the issues of whether the village was negligent and whether its negligence proximately caused plaintiff's injuries. (122 Ill. App. 3d 405, 411.) We find *Comastro* inapposite to the case at bar.

■ Although the city of Countryside charged plaintiff a registration fee for his participation in the city's summer recreation program, that program is not analogous to the operation of a business enterprise such as the Rosemont Horizon. In its sponsorship of the summer recreation program, the city of Countryside was acting within its governmental capacity and was not acting in a business or proprietary capacity. (*Cf. White v. City of Centralia* (1956), 8 Ill. App. 2d 483, 131 N.E.2d 825.) We therefore, conclude that the city did not create a "special relationship" with the plaintiff and, thus, was subject to the general rule of nonliability of municipalities.

Finally, the city of Countryside did not waive its immunity through its membership in the Intergovernmental Risk Management Agency (IRMA).

IRMA is an organization comprised of small municipalities. Under the provisions of IRMA, each municipality is responsible for the first $1,000 of liability that that municipality may incur. Any liability between $1,000 and $250,000 is paid by IRMA through a pool of money paid into the organization from revenues of the member municipalities. IRMA purchases insurance policies to cover any liability in excess of $250,000.

Recently in *Antiporek v. Village of Hillside* (1985), 135 Ill. App. 3d 871, we held that membership in IRMA did not act to waive immunity granted the member municipalities under the Tort Immunity Act. In *Antiporek* we reaffirmed our previous distinction between the purchase of insurance from separate licensed insurance companies and self insurance (see *Ebrahim v. Checker Taxi Co.* (1984), 128 Ill. App. 3d 906, 471 N.E.2d 632; *Hill v. Catholic Charities* (1983), 118 Ill. App. 3d 488, 455 N.E.2d 183), and the public policy interest of " 'protecting public funds and property and preventing the diversion of tax monies from their intended purpose to the payment of damage claims.' " *Antiporek v. Village of Hillside* (1985), 135 Ill. App. 3d 871, 875, quoting *Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 609, 394 N.E.2d 1291.

Furthermore, in *Beckus v. Chicago Board of Education* (1979), 78 Ill. App. 3d 558, 397 N.E.2d 175, we held that where the defendant board of education had purchased insurance for liability over $1,000,000 and had "self-insured retention" up to $1,000,000; (78 Ill. App. 3d 558, 559) and the plaintiff there sought $50,000 in damages, the board did not waive its immunity with respect to plaintiff's injury. 78 Ill. App. 3d 558, 561.

■ Similarly, in the case at bar IRMA constitutes a joint self-insurance venture by its members for liability between $1,000 and

$250,000. In his complaint plaintiff seeks $15,000 in damages. Neither the city of Countryside nor IRMA has purchased insurance to cover plaintiff's injury. If plaintiff were to recover, the judgment would be paid from a reserve of public money. As we stated in *Antiporek v. Village of Hillside* (1985), 135 Ill. App. 3d 871, 876:

> "The waiver of immunity provisions of section 9—103 (Ill. Rev. Stat. 1983, ch. 85, par. 9—103) is applicable only where municipalities have purchased insurance from conventional insurance companies which pay judgments from nonpublic funds."

Accordingly, we conclude that the city of Countryside has not waived its immunity.

For these reasons the judgment appealed from is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.