NO. 4-96-0460 

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT                         

           

BRETT LONGFELLOW, a Minor Child, by     )    Appeal from

his Mother and Next Friend, HOLLY       )    Circuit Court of

LONGFELLOW, and HOLLY LONGFELLOW,       )    Champaign County

          Plaintiffs-Appellants,        )    No. 94L1715

          v.                            )

J.D. COREY, TERRY NAPPER, and URBANA    )    Honorable

SCHOOL DISTRICT NO. 116,                )    John G. Townsend,

          Defendants-Appellees.         )    Judge Presiding.

_________________________________________________________________

          PRESIDING JUSTICE STEIGMANN delivered the opinion of

the court:

          In November 1994, plaintiff, Holly Longfellow, individ-

ually and as the mother and next friend of Brett Longfellow, a

minor, sued defendants, Urbana School District No. 116 (School

District), Terry Napper, and J.D. Corey, in an action for person-

al injuries.  In May 1996, the trial court determined that defen-

dants were immune from liability pursuant to section 3-108(a) of

the Local Governmental and Governmental Employees Tort Immunity

Act (Act) (745 ILCS 10/3-108(a) (West 1992)) and dismissed

plaintiffs' second-amended complaint with prejudice.  Plaintiffs

appeal from that dismissal, and we reverse and remand.    

                               I. BACKGROUND

          In February 1996, plaintiffs filed a second-amended

complaint alleging that on December 1, 1993, Brett (then eight

years old) was a student in an after-school child care program at

Wiley Elementary School in Urbana, Illinois.  Defendant School

District operated the after-school program.  The School District

employed defendant Napper as the site coordinator and defendant

Corey as a recreational leader for the program.  The second-

amended complaint alleged that on December 1, 1993, Corey "di-

rected [Brett] to participate in a game of tag requiring [Brett]

to have a piece of cloth in his pant's back pocket and to be

pursued by [Corey], for the intended purpose of avoiding [Corey]

from removing the piece of cloth from [Brett's] pant's back pock-

et."  At Corey's direction, Brett ran backward across the gymna-

sium floor while Corey ran toward him.  The complaint further

alleged that (1) Corey was "significantly" taller and faster than

Brett; (2) Corey had a "longer foot span and longer gait"; (3)

Corey was "running full speed facing straight at" Brett as Brett

ran backward, mirroring Corey's movements; (4) Corey was able to

change direction more quickly than Brett; and (5) Brett was

pushed beyond his normal capabilities by Corey's actions.  The

complaint further alleged that "as a direct and proximate result"

of Corey's conduct as an active participant in the game, Brett

tripped while running backward and fell, suffering injuries to

his mouth and teeth.  

          Defendants moved to dismiss the second-amended com-

plaint pursuant to section 2-619(a)(9) of the Code of Civil

Procedure (735 ILCS 5/2-619(a)(9) (West 1992)).  They claimed

that "all counts of the [p]laintiff's [sic] second[-]amended com-

plaint are based upon allegations that the [d]efendants failed to

properly supervise the activities" of Brett, and therefore,

section 3-108(a) of the Act immunized them from liability from

any claim of negligence or wilful or wanton conduct based on

supervision of an activity.

          In May 1996, after considering the parties' motions and

arguments, the trial court granted defendants' motion and dis-

missed the second-amended complaint with prejudice.  The court

specifically found that "there is no qualitative difference

between the 'participatory' activity argued by [p]laintiff[s] to

be present here and the activities involved in supervising encom-

passed by [section 3-108(a) of the Act]."

                       II. SECTION 3-108(a) IMMUNITY

          Plaintiffs argue that section 3-108(a) of the Act does

not provide immunity in this case where "[t]he cause of action in

question rests squarely on the active participation by an adult

in a children's game, not on a failure to adequately supervise a

children's game."  Plaintiffs contend that section 3-108(a) of

the Act is specifically limited to situations in which a failure

to "oversee" an activity results in injury and does not extend to

situations in which "participatory" conduct proximately causes

the injury.  In response, defendants argue that even though the

second-amended complaint did not specifically allege a "failure

to supervise," the facts alleged therein constitute nothing more

than supervision.  

          The purpose of a section 2-619 motion to dismiss is to

provide a means to dispose of issues of law or easily proved

issues of fact.  Kedzie & 103rd Currency Exchange, Inc. v. Hodge,

156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993).  In the present

case, the ground advanced for dismissing the complaint is that

the claims asserted therein are barred by a defense that com-

pletely negates the asserted causes of action.  Payne v. Lake

Forest Community High School District 115, 268 Ill. App. 3d 783,

784-85, 644 N.E.2d 835, 836 (1994); see 735 ILCS 5/2-619(a)(9)

(West 1992).  The trial court should grant the motion and dismiss

the complaint if, after construing the allegations in the light

most favorable to the plaintiff, no set of facts can be proved

which would entitle the plaintiff to recover.  Payne, 268 Ill.

App. 3d at 785, 644 N.E.2d at 836.  When reviewing the propriety

of the trial court's decision to grant a section 2-619 motion,

the reviewing court must accept as true all well-pleaded facts

alleged in the complaint.  Payne, 268 Ill. App. 3d at 785, 644

N.E.2d at 836.  We review the trial court's ruling on the

defendants' section 2-619 motion de novo.  Payne, 268 Ill. App.

3d at 785, 644 N.E.2d at 836.

          In the present case, defendants relied upon the immuni-

ty provided by section 3-108(a) of the Act, which reads as

follows:

               "(a) Except as otherwise provided by

          this Act and subject to subdivision (b) nei-

          ther a local public entity nor a public em-

          ployee is liable for an injury caused by a

          failure to supervise an activity on or the

          use of any public property."  745 ILCS 10/3-

          108(a) (West 1992).

The supreme court recently discussed section 3-108 of the Act in

Barnett v. Zion Park District, 171 Ill. 2d 378, 388-89, 665

N.E.2d 808, 813 (1996), as follows:

               "In interpreting section 3-108, our

          primary goal is to ascertain and give effect

          to the intention of the legislature.  We seek

          the legislative intent primarily from the

          language used in the Tort Immunity Act.  We

          evaluate the Act as a whole; we construe each

          provision in connection with every other

          section.  [Citation.]  If we can ascertain

          the legislative intent from the plain lan-

          guage of the Act itself, that intent must

          prevail, and we will give it effect without

          resorting to other interpretive aids.  [Cita-

          tion.]  We must not depart from the plain

          language of the Act by reading into it excep-

          tions, limitations, or conditions that con-

          flict with the express legislative intent."

          The Act itself does not define the term "supervise" or

the phrase "failure to supervise."  Webster's Third New Interna-

tional Dictionary defines "supervise" as follows: 

          "[T]o coordinate, direct, and inspect contin-

          uously and at first hand the accomplishment

          of: oversee with the powers of direction and

          decision the implementation of one's own or

          another's intentions."  (Emphasis added.) 

          Webster's Third New International Dictionary

          2296 (1993).

The Oxford English Dictionary defines "supervision" as "[g]eneral

management, direction, or control; oversight, superintendence." 

Oxford English Dictionary 245 (2d ed. 1989).  Further, the Oxford

English Dictionary defines "direct" in the following manner: 

"[k]eep in right order; to regulate, control, govern the actions

of *** [t]o cause (a thing or person) to move *** towards a

place."  (Emphasis added.)  Oxford English Dictionary 701 (2d ed.

1989).  One author has defined "supervision" (in the context of

school tort liability) as "the general conduct of the teacher or

other school personnel, and thus it includes negligent acts

inflicting or resulting in injury."  Annotation, Tort Liability

of Public Schools and Institutions of Higher Learning for Inju-

ries Resulting from Lack or Insufficiency of Supervision, 38

A.L.R. 3d 830, 833 (1971).  Further, in its ordinary usage,

supervision often involves some active participation (such as

when physical education instructors, teachers aides, or recre-

ational leaders provide hands-on instruction to students or

referee games devised for students).  

          Giving the statutory language its plain and ordinary

meaning, we conclude that supervision extends beyond passive

oversight of an activity and includes direction, teaching,

demonstration of techniques, and--to some degree--active partici-

pation in an activity while supervising it.  Because supervision

often involves some level of active participation, it would be

illogical to provide immunity to a public employee for passively

overseeing an activity, yet withhold immunity the moment such an

employee undertakes any active role in an activity that employee

is supervising.  However, supervision does not encompass active

participation that rises to the level--as here--of intense one-

on-one competition in the form of a game or activity that has a

winner and a loser.  Under such circumstances, the public employ-

ee clearly has abandoned the role of supervisor and become an

equal competitor with the participant.

          For example, within the scope of supervision, a wres-

tling coach may physically demonstrate a particular technique or

hold on a wrestler.  However, if that wrestling coach partici-

pates in a one-on-one competition with a student wrestler, the

coach abandons his role as supervisor and becomes an equal

competitor with his student wrestler.  Within the supervisory

role, a basketball coach or instructor may teach her players or

students how to run a fast break by actively participating in the

fast break drills.  But if that basketball coach or instructor

participates in a competitive one-on-one game with one of her

players or students, she abandons the supervisory role.  Further,

within the scope of supervision, a football coach may hold a

blocking sled for players or demonstrate blocking techniques. 

However, if that football coach engages in a head-to-head block-

ing or tackling competition with a player, he abandons the role

of supervisor. 

          Such an interpretation finds support in appellate court

decisions concluding that section 3-108(a) of the Act provides

immunity not only for complete "failure to supervise," but also

for inadequate or improper supervision, including negligent or

willful or wanton conduct once supervision is undertaken.  In Koh

v. Village Greens, 158 Ill. App. 3d 226, 227, 511 N.E.2d 854, 855

(1987), the plaintiff sought recovery for injuries sustained when

she was struck by a golf ball while on a public golf course owned

and operated by a village.  The plaintiff alleged, in part, that

she was injured as a result of the defendant's conduct in manag-

ing the crowd at the first tee where defendant directed partici-

pants and spectators to stand on the golf course where errant

golf balls could reasonably strike those individuals.  Koh, 158

Ill. App. 3d at 228, 511 N.E.2d at 855.  The trial court granted

the defendant's motion to dismiss one count of the plaintiff's

complaint, finding that section 3-108(a) of the Act immunized the

village from liability.  Koh, 158 Ill. App. 3d at 228, 511 N.E.2d

at 855.  On appeal, the plaintiff conceded that a public entity

and its employees have immunity from liability for a failure to

undertake supervision of activities on public property, but

argued that such immunity does not extend to negligent conduct

once supervision is undertaken.  Koh, 158 Ill. App. 3d at 228-29,

511 N.E.2d at 855.  The Second District Appellate Court rejected

the plaintiff's argument, concluding that "the alleged negligent

conduct of the defendant village in supervising and regulating

the use of its public golf course is immune from the liability" 

pursuant to section 3-108(a) of the Act.  (Emphasis added.)  Koh,

158 Ill. App. 3d at 229, 511 N.E.2d at 856; see also Ramos v.

City of Countryside, 137 Ill. App. 3d 1028, 1032, 485 N.E.2d 418,

421 (1985) (where the court held that section 3-108(a) of the Act

was applicable "to shield the city *** from liability for an

asserted failure to adequately supervise a summer recreation

program held on public property"); Payne, 268 Ill. App. 3d at

784, 644 N.E.2d at 836. 

          In the present case, Corey (the adult recreational

leader) directed eight-year-old Brett to participate in a game of

tag in which Corey ran full tilt toward Brett as Brett ran

backward attempting to avoid him.  Corey and Brett were engaged

in an intense one-on-one competition in an activity that has a

winner and a loser.  Under these circumstances, Corey abandoned

his role as supervisor of the activity and became an equal

competitor with Brett.  Accordingly, we hold that the trial court

erred by determining that defendants were immune from liability

pursuant to section 3-108(a) of the Act and dismissing plain-

tiffs' second-amended complaint with prejudice.

                              III. CONCLUSION

          For the reasons stated, we reverse and remand for

further proceedings consistent with the views expressed herein.

          Reversed and remanded.

          GARMAN and KNECHT, JJ., concur.